655 P.2d 39

PHOENIX PEST CONTROL,
Petitioner Employer,

Transamerica Insurance Services, c/o Premier Insurance Company,
Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Harold Fleming, Respondent Employee.

No. 1 CA–IC 2565.

Court of Appeals of Arizona, Division 1, Department C.

Sept. 30, 1982.
Rehearing Denied Nov. 10, 1982.

---

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by J. Victor Stoffa and Larry L. Smith, Phoenix, for petitioner employer and petitioner carrier.

Christopher J. Philips, P.C. by Christopher J. Philips, Phoenix, for respondent employee.

James A. Overholt, Acting Chief Counsel, for respondent Indus. Com'n of Arizona.

## OPINION

HAIRE, Judge.

In this review of an award entered by the respondent Commission in a workmen's compensation proceeding, issues are raised concerning whether the claim filed by the respondent employee constituted an occupational disease claim, and, if so, whether it must be administered in accordance with Arizona's statutes governing occupational disease claims. The administrative law judge determined that the occupational disease statutes were not applicable.

In his claim for benefits, claimant alleged that he had sustained a "gradual injury as result of chemicals used in job as exterminator." He described his injury as involving "respiratory, pulmonary problems." The claim was denied by the petitioner carrier and claimant then requested that a hearing be held.

Prior to the time of the hearing, claimant was examined at the carrier's request by Dr. Robert J. Clark, a board certified specialist in infectious and pulmonary diseases. After that examination, the carrier filed with the administrative law judge a "Motion for Medical Evaluation" seeking the appointment of a committee of medical expert consultants pursuant to A.R.S. § 23–901.03.

The provisions of A.R.S. § 23–901.03 purport to be applicable when claims for compensation benefits are based upon a disabling condition resulting from an occupational disease. In response to the carrier's request for the appointment of the committee of expert consultants, the administrative law judge did not attempt to decide whether claimant's alleged injury constituted an occupational disease falling within the definition set forth in A.R.S. § 23–901(12)(c). Instead, he summarily denied the request, stating:

"For the above referenced statutes to apply, *A.R.S.* § 23–901.03 appears to require that the claimant specifically desig-

nate his claim as an Occupational Disease as defined in *A.R.S.* § 23–901–9(c), [now *A.R.S.* § 23–901(12)(c)] and with the higher standards of proof as reflected in *A.R.S.* § 23–901.01. The option appears to be left with the claimant as to whether he wishes to proceed under *A.R.S.* § 23–901.01 or whether he simply wishes to proceed by filing a normal claim for Workmen's Compensation injury with the less difficult standard of proof as reflected in the case law previously cited. Accordingly, it would appear to the undersigned that the claimant has not specifically made known his desire to proceed under *A.R.S.* § 23–901.01, or has not so far elected to proceed under that provision and the employer does not have the option to make the election to file a claim under *A.R.S.* § 23–901.01. Therefore, the appointment of the medical committee is questionable at this time."

The administrative law judge refused to reconsider his ruling, and the matter proceeded to a hearing on the merits of whether the claim was compensable under the general provisions of the workmen's compensation act, without regard to the provisions governing occupational disease claims.

After the hearing, the administrative law judge concluded that the claim was compensable. In his findings, he summarized the evidence as follows:

"1. In a Workman's Report of Injury filed on December 21, 1979 applicant alleged he sustained a gradual injury arising out of and in the course of his employment which became manifest by April 1979 as a result of chemicals used in job as exterminator.

\*　　\*　　\*　　\*　　\*　　\*

"3. Applicant testified that since the late Summer of 1977 he had been working for defendant employer. As an assistant service manager applicant stated that he had both field and supervising control responsibilities. As such, applicant advised that he was exposed to pesticides when pouring liquids into spray cans and when spraying in either a mist or stream form.... As of February 8, 1979 when he saw a Dr. Simpson he had symptoms of coughing, tightness in chest and had not been feeling well for three or four or two weeks after return from Missouri. Applicant advised he stopped smoking cigarettes around 1970 and had not smoked a pipe for 15 years....

"4. Robert J. Clark, M.D. board certified in infectious diseases and pulmonary diseases testified he had examined applicant on June 25, 1980 and November 4, 1980. He stated applicant's symptoms were consistent with a diagnosis of an asthma-like syndrome. He stated he did not believe applicant's present symptoms were related to heart disease. As a result of pulmonary function studies he found applicant had a mild non-reversible obstructive defect in lungs for which he needed treatment. He advised applicant had current symptoms of coughing, wheezing, dypsnea on exertion and that his symptoms were unrelated to smoking as he had not smoked for 10 years. Dr. Clark believed that in some way pesticides with which applicant came in contact sensitized his airways that have caused current problems and symptoms. He admitted pulmonary specialists generally would dispute causal relationship with respect to pesticides and asthma....

\*　　\*　　\*　　\*　　\*　　\*

"8. When a condition has developed instantaneously but gradually over a period of time resulting in a definite though unexpected injury or disease, which injury or disease is work connected, then said injury or disease is the result of an accident within the terms of the Arizona Workmen's Compensation Act. [Citations omitted].

"9. Applicant is not required to bring a claim under Occupational Disease Statutes where a disease accidently [sic] occurs as a result of applicant's employment....

\*　　\*　　\*　　\*　　\*　　\*

"13. Based upon all the testimony ... it is believed that applicant did contract

or aggravate an asthmatic condition which required him to leave his work as a result of exposure to pesticides."

The administrative law judge then entered an award for medical, surgical and hospital benefits, as well as for temporary disability compensation. After the exhaustion of further administrative review possibilities, the carrier then commenced this special action proceeding seeking appellate review of the award entered by the administrative law judge.

Before this court the sole issue urged by the carrier is that the administrative law judge erred in refusing the request for the convening of a committee of expert medical consultants pursuant to A.R.S. § 23–901.03. The carrier contends that because of that error, the award must be set aside. Fundamental to the carrier's contention is the premise that when a claim for workmen's compensation benefits is based upon an injury which constitutes an occupational disease within the meaning of § 23–901(12)(c), a workmen's compensation insurance carrier may insist that the claim be processed as an occupational disease claim in accordance with the provisions of §§ 23–901.01 et seq. As indicated in the administrative law judge's ruling, he rejected that premise, ruling instead that a claimant alone has the sole option to determine whether "he wishes to proceed under A.R.S. § 23–901.01 [the provisions governing an occupational disease claim] or whether he simply wishes to proceed by filing a normal claim for Workmen's Compensation injury with the less difficult standard of proof...."

In support of the administrative law judge's refusal to convene the committee of medical experts, the claimant's initial argument is that the administrative law judge found that the basis for the claim was not an occupational disease, and that the record contains sufficient evidence to support that finding. Both facets of this argument are without merit. First, from the record it is clear that the administrative law judge did

not purport to rule on this question and, in the award, did not directly address the issue of whether claimant's condition was, or was not, the result of an occupational disease. However, to the extent that any indirect indication of his opinion on this question can be gleaned from his award, it appears that, contrary to claimant's contention, he in fact considered the condition to be a disease.[1]

Furthermore, while the question of whether a given condition constitutes an occupational disease might be very difficult to resolve under some factual circumstances, no such difficulty is presented by the record in this case. However, before proceeding with a review of the evidence on this issue, and in order to gain a proper perspective regarding Arizona's occupational disease statutory scheme, it is necessary to first give some consideration to the historical development of coverage under Arizona's workmen's compensation laws for conditions resulting from occupational diseases.

Prior to the adoption of liberalizing changes in 1971 and 1973, the Arizona statutory provisions authorizing the payment of compensation benefits for conditions resulting from occupational diseases were quite restrictive. Not only were compensable occupational diseases limited to those diseases expressly listed in the statute, but, in addition, the benefits authorized for conditions resulting from the occupational diseases listed were substantially less favorable to the disabled workman than those benefits available under the general workmen's compensation laws. See e.g., A.R.S. §§ 23–1102, 23–1107, and 23–1241, repealed, Laws 1973, Ch. 53, § 4. As a result of the restrictive nature of the occupational disease laws, the Arizona courts, through decisions entered prior to the 1973 statutory amendments, expanded the normal concept of "injury by accident" so as to allow compensation under the workmen's compensation laws for disabilities resulting from employ-

---

1. See excerpts from the administrative law judge's decision previously quoted in this opinion.

ment related diseases not specifically listed in the occupational disease statutes. *See Mead v. American Smelting & Refining Company,* 90 Ariz. 32, 363 P.2d 930 (1961); *Dunlap v. Industrial Commission,* 90 Ariz. 3, 363 P.2d 600 (1961); *In re Mitchell,* 61 Ariz. 436, 150 P.2d 355 (1944); *Enyart v. Industrial Commission,* 10 Ariz.App. 310, 458 P.2d 514 (1969); and *Reilly v. Industrial Commission,* 1 Ariz.App. 12, 398 P.2d 920 (1965). In essence, if employment related causation could be shown, the Arizona courts considered nonlisted occupational diseases to be compensable, not as occupational diseases, but rather as "injuries by accident" under Arizona's workmen's compensation act. Nevertheless, even under the pre-1973 statutes, if the condition was the result of an occupational disease specifically listed under former A.R.S. § 23–1102, the courts required that the claim be processed under the occupational disease statutes, and coverage could not be claimed under the provisions of the workmen's compensation act. *See Featherman v. Industrial Commission,* 112 Ariz. 52, 537 P.2d 922 (1975).

In 1971, substantial statutory changes were enacted liberalizing the compensation benefits available for the then-listed occupational diseases so as to make the benefits comparable in many respects to those available for claims filed under the workmen's compensation act. *See* Laws 1971, Ch. 173. Additional changes in the occupational disease statutory scheme were enacted in 1973. *See* Laws 1973, Ch. 53, § 2. These enactments repealed the statutory listing of specific occupational diseases and expanded the definition of "personal injury by accident" within our workmen's compensation act so as to result in the inclusion of occupational diseases within the general coverage of the workmen's compensation act.[2] However, the 1973 amendments did not abolish all

differences between claims based upon diseases and those based upon the more traditional concept of workmen's compensation injuries. Rather, when a claim is based upon an occupational disease, it is deemed to arise out of the employment only if the six statutory causation requirements now listed in A.R.S. § 23–901.01 are met. Further, § 23–901.02 limits the employers who are subject to liability, and, particularly pertinent to the issues in this appeal, § 23–901.03 requires the appointment of a committee of expert medical consultants to aid in the determination of claims based upon occupational diseases when an appropriate request is made. *See also* §§ 23–901.04 and 23–901.05 for further statutory provisions pertaining exclusively to claims based upon conditions resulting from occupational diseases.

The question presented on this review requires that we determine whether the present occupational disease statutory scheme applies only to those claims which would have constituted occupational disease claims under the list of diseases previously set forth in former A.R.S. § 23–1102, or whether the present occupational disease statutory provisions apply to all claims based upon conditions resulting from occupational diseases, regardless of the fact that the particular occupational disease might not have been listed as such under the prior law.

In our opinion the provisions of A.R.S. §§ 23–901.01 *et seq.* are now applicable to all workmen's compensation claims which are factually based upon conditions resulting from occupational diseases, notwithstanding the fact that some of those diseases might have been excluded from our prior occupational disease law because they were not specifically listed in former § 23–

---

**2.** A.R.S. § 23–901(12) now provides:

"12. 'Personal injury by accident arising out of, and in the course of employment' shall be defined as:

"(a) Personal injury by accident arising out of, and in the course of employment, or

"(b) An injury caused by the wilful act of a third person directed against an employee because of his employment, but does not in-

clude a disease unless resulting from the injury, or

"(c) An occupational disease which is due to causes and conditions characteristic of and peculiar to a particular trade, occupation, process or employment, and not the ordinary diseases to which the general public is exposed, and subject to the provisions of § 23–901.01."

1102. In considering this question, it must be kept in mind that by reason of the restrictions imposed by former § 23–1102, many conditions which were in fact occupational diseases were previously drawn within the scope of workmen's compensation coverage through the development of gradual injury concepts or otherwise. By reason of the 1973 amendments, there is no longer a restrictive statutory list of specific diseases which alone qualify as occupational diseases. Instead, former A.R.S. § 23–1102 has been replaced by the more inclusive generic definition now contained in § 23–901(12)(c). There would have been no reason to repeal former § 23–1102 if the intent had been to continue to restrict the application of the statutes governing the processing of occupational disease claims to those occupational diseases which were previously listed in the statute.

■ Against this background we now consider whether the condition upon which claimant based his claim constituted an occupational disease. Under the provisions of A.R.S. § 23–901(12)(c) all occupational diseases are covered "which [are] due to causes and conditions characteristic of and peculiar to a particular ... employment, and not the ordinary diseases to which the general public is exposed...." Here, claimant's condition was not the result of a sudden traumatic injury, but rather, by his own allegations (and proof) was a gradual result of exposure to the chemicals (pesticides) used by him in his employment as an exterminator. Occupational diseases, as the very name implies, are produced by the particular substances or conditions inherent in the environment of the employment. In his claim claimant alleged that the resulting condition consisted of "respiratory, pulmonary problems." Historically, lung claims of this nature have been considered as diseases, and claimant has cited no authorities to the contrary.[3] Finally, Dr. Clark, whose testimony the administrative law judge relied upon to find the claim compensable,

considered claimant's asthmatic condition to be a "nonreversible airways disease" resulting from the fact that pesticides had sensitized the airways in claimant's lungs. Assuming causation, it would be difficult to argue under the present state of the record that claimant's condition was not a condition "characteristic of and peculiar to [his] employment" as an exterminator. We therefore conclude that the claim was based upon an occupational disease within the meaning of the statute.

We next consider whether the administrative law judge erred in ruling that nevertheless claimant could disregard the statutory provisions governing occupational disease claims and "elect" to have his claim processed as a routine workmen's compensation claim with the lesser standard of proof and without regard to the other provisions governing the administration of occupational disease claims found in A.R.S. §§ 23–901.01 et seq. We find nothing in the statutes which would support this ruling by the administrative law judge. The provisions of § 23–901(12)(c) which now bring occupational diseases within the workmen's compensation act as constituting personal injuries by accident expressly make such claims "subject to the provisions of § 23–901.01." That section (23–901.01) makes the occupational diseases as defined in § 23–901(12)(c) compensable "only if all of the following six [therein designated] requirements exist." These statutes are not phrased so as to make their applicability optional at the election of the claimant. Finally, as we have previously discussed in this opinion, no option was given to a claimant under the prior statutes to elect to process an occupational disease claim without regard to occupational disease strictures. Under the former occupational disease statutory scheme, once a claim was determined to be based upon an occupational disease, the cases held that the claim must be processed as an occupational disease claim. *Featherman v. Industrial Commission, supra.*

---

**3.** We note that in former A.R.S. § 23–1102, various gradually developing lung conditions

were classified as occupational diseases.

We also reject the claimant's argument that the provisions of A.R.S. §§ 23–901.01 *et seq.* governing the administration of occupational disease claims are somehow historical relics or accidental carryovers from prior occupational disease statutory schemes and are now "inoperable". These provisions are not the result of some accidental failure to repeal prior statutory provisions during the 1973 legislative revision of Arizona's statutes governing occupational disease compensation. During that revision, *all prior occupational disease statutes were repealed.* Although some of the present occupational disease statutes are identical to prior statutes, they were expressly enacted anew in 1973 as part of the legislative package governing occupational disease compensation, and thus they cannot now be disregarded as suggested by claimant.

We conclude that under our present statutory scheme, when the condition giving rise to the claim for workmen's compensation benefits is a disease, either party is entitled to require that the claim be administered pursuant to the provisions of the workmen's compensation act governing occupational disease.[4] Any other conclusion would have the effect of completely nullifying all statutory provisions governing the administration of occupational disease claims, since, as observed by the carrier, if the option to file the claim as an occupational disease claim is left solely to the claimant, such an option "would be exercised only by the most blatant of malpractitioners."

Here, by its letter to the administrative law judge prior to the first hearing, the carrier clearly made known its intention to require that the claim be administered as an occupational disease claim, and we have held that under the present state of the record both the law and the facts required that it be treated as such.[5] Under the circumstances, the administrative law judge erred in refusing the carrier's request for the appointment of a committee of expert medical consultants pursuant to A.R.S. § 23–901.03. The fact that the carrier had previously obtained an independent medical examination of the claimant pursuant to § 23–1026 does not, as urged by the claimant, preclude a later request for the appointment of such a committee. In fact, it might well be that it is the medical opinion resulting from such an examination which first demonstrates that the claim is one based upon an occupational disease. *See A.J. Bayless v. Industrial Commission,* 134 Ariz. 243, 655 P.2d 363 (1982).

The award is set aside.

EUBANK and CONTRERAS, JJ., concur.

---

4. Our stated conclusion is not intended to apply to those situations involving diseases for which benefits might be recoverable as a compensable consequence of some prior industrial claim.

5. We do not imply that a request for the appointment of a committee of experts pursuant to A.R.S. § 23–901.03 must be made prior to the first hearing. Concerning the timeliness of such a request, see *A.J. Bayless v. Industrial Commission,* 134 Ariz. 243, 655 P.2d 363 (1982) wherein we upheld the granting of a claimant's request for the appointment of such a committee of experts, submitted at the close of the last scheduled hearing. We do note, however, that a carrier's contention that the claim constitutes an occupational disease claim should be advanced in a timely manner so as to put the claimant on notice, prior to the close of the evidentiary phase of the proceeding, of his or her possible burden of proving compensability under the occupational disease statutes. *See Priedigkeit v. Industrial Commission,* 20 Ariz. App. 594, 514 P.2d 1045 (1973).