697 P.2d 1114

**AMERICAN INSURANCE COMPANY, Fosgate Electronics, Petitioners,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Premier Insurance Company, Merrill Cable Equipment Corporation, Sentry Insurance Company, Respondents,**

**Emily Cox, Respondent Employee.**

**No. 1 CA–IC 3064.**

Court of Appeals of Arizona, Division 2, Department D.

Oct. 30, 1984.

Reconsideration Denied Jan. 25, 1985.

Review Denied April 9, 1985.

Jennings, Kepner & Haug by Craig R. Kepner, Julia C. Attwood, Steven S. Guy, Phoenix, for petitioners.

Sandra A. Day, Chief Counsel by Roger Rea, Legal Counsel, Phoenix, for respondent.Indus. Com'n.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by J. Victor Stoffa, Brian C. Bond, Phoenix, for respondents Merrill Cable and Premier Ins. Co.

Lewis & Roca by Merton E. Marks, R. Kent Klein, Stephen M. Bressler, Phoenix, for respondent Sentry Ins.

Michael Mignella, P.C. by Mark Mignella and William T. Keane, Phoenix, for respondent employee.

## OPINION

BROOKS, Presiding Judge.

This is a special action review of an Industrial Commission award imposing on the petitioners exclusive liability for a compensable occupational disease. Compensability is now conceded. The sole dispute is between two employers and their respective carriers concerning liability for this disease. For the following reasons, we set aside the award.

## PROCEDURAL HISTORY

Between December, 1977 and February, 1980, the respondent employee (claimant) worked for the petitioner employer, Fosgate Electronics (Fosgate). Three different insurers were at risk: American Insurance Co. (American), from December, 1977 to April, 1979; the Industrial Commission Special Fund, from April, 1979 to October, 1979; and Sentry Insurance Co. (Sentry), from November 1, 1979 to February 19, 1980. Between March, 1980 and October, 1980, claimant worked for the respondent employer, Merrill Cable Equipment Corp. (Merrill). Premier Insurance Co. (Premier) was at risk then.

Both employments exposed claimant to solder flux. At Fosgate, she performed a dipping operation that directly exposed her

to strong fumes and billowing smoke two to three hours a day. At Merrill, she soldered circuits to boards throughout a ten-hour shift. In addition, her work station was twice moved, which increased her exposure to fumes and smoke from a similar dipping operation.

In 1978, claimant first had asthma-like symptoms of cough, wheezing and shortness of breath. These arose when she was exposed to solder flux at work and abated when she was away from work. Beginning in November, 1978, she periodically saw her family physician, Lawrence Shapiro, M.D., for respiratory problems, but never missed work. By late May, 1980, her symptoms were chronic. She returned to Dr. Shapiro, who referred her to a pulmonary specialist, Robert J. Clark, M.D.

Dr. Clark diagnosed hypersensitive lung disease caused by exposure to solder flux at work. He initially treated the condition with medication, but when claimant failed to respond, the doctor advised her to stop working where she was exposed to solder flux. Claimant then quit her job in accordance with Dr. Clark's recommendation and subsequently filed her claims for workers' compensation.

Pending hearings, three pulmonary specialists examined claimant: Arnold Serbin, M.D., John L. Friedman, M.D., and Gregory Lauver, M.D. These medical experts together with Drs. Shapiro and Clark all testified at the first set of hearings. Dr. Lauver then performed a challenge test, a controlled exposure to solder flux with a pulmonary function study to monitor the effects. After this test, the four pulmonary specialists again testified. All the interested parties had the opportunity to examine or cross-examine each witness. This generated a record that is voluminous, complex and conflicting.

The administrative law judge responded with a forty page award. We attempt to summarize the relevant findings as follows:

(1) Although claimant had preexisting emphysema from cigarette smoking, her current condition was primarily hypersensitive lung disease from exposure to solder flux at work.

(2) The hypersensitivity is an allergic reaction that suddenly develops after exposure to an allergen. Once sensitization occurs, it is permanent. In the present case, claimant was sensitized in the spring of 1978 working for Fosgate while American was at risk.

(3) Exposures subsequent to sensitization produced allergy-like symptoms, but the evidence is insufficient to show that their effect was a "significant and/or measurable 'permanency'."

(4) Claimant's condition is an occupational disease. A.R.S. § 23–901.02, which determines the party liable for a compensable occupational disease, applies only if an exposure causes a permanent injury or anatomic change.

(5) The date of disability therefore is not determinative. Merrill is liable only if claimant suffered increased permanent injury while working for it.

(6) Because sensitization itself is a permanent injury and the evidence concerning subsequent exposures is insufficient to prove a permanent injury, claimant was last injuriously exposed working for Fosgate while American was at risk. They, therefore, are exclusively liable for the occupational disease.

The award was affirmed on administrative review, and this special action followed.

## LEGAL ANALYSIS

■ The parties correctly characterize claimant's condition as an occupational disease. An occupational disease is one that is "due to causes and conditions characteristic of and peculiar to a particular ... employment, and not the ordinary diseases to which the general public is exposed...." A.R.S. § 23–901(12)(c); *see Phoenix Pest Control v. Industrial Commission*, 134 Ariz. 215, 655 P.2d 39 (App.1982) (sensitized airways caused by exposure to pesticides at work is an occupational disease). The special occupational disease statutes therefore apply to this claim. *See Phoenix Pest Control*, 134 Ariz. at 219–20, 655 P.2d

at 43–44; *see generally* A.R.S. § 23–901.01 to –901.05. In particular, the last injurious exposure rule determines the party liable for a compensable occupational disease:

> Where compensation is payable for an occupational disease the only employer liable shall be the employer in whose employment the employee was *last injuriously exposed to the hazards of such disease....*

A.R.S. § 23–901.02 (emphasis added).

This case is of first impression. Prior cases have applied the last injurious exposure statute to occupational diseases involving cumulative exposures that culminate in a disabling disease. *E.g. Utah Constr. Co. v. Berg,* 68 Ariz. 285, 205 P.2d 367 (1949) (silicosis from cumulative exposure to silicone dioxide dust during 30 years of employment—applying predecessor statute, A.R.S. § 56–1214); *State Compensation Fund v. Joe,* 25 Ariz.App. 361, 543 P.2d 790 (1976) (lung cancer from exposure during many years of uranium mining). In contrast, in the instant case, the exposure was harmless until a date certain when sensitization occurred; after that, exposure caused an allergic reaction because of the sensitization. We must decide whether or not these subsequent exposures were injurious within the meaning of our statute.

The respondents principally rely on *Matter of Compensation of Bracke,* 293 Or. 239, 646 P.2d 1330 (1982). *Bracke* is a meat wrapper's asthma case. The claimant became sensitized to fumes while working for her first employer and required medical treatment for her symptoms. After working for two other employers, her symptoms became more severe and she had to stop work. Exclusive liability was imposed on the first employer:

> Liability was properly assigned ... in this case because the disease was contracted and *disability occurred* during [the first] employment .... [T]he [subsequent] employment ... did not contrib-

ute to the cause of, aggravate, or exacerbate the underlying disease.... Rather, claimant's subsequent employment only activated the symptoms of a pre-existing disease.... Liability for the disability caused by the underlying disease is fixed when the disability arises. A recurrence of symptoms which does not affect the extent of a continuing underlying disease does not shift liability for the disabling disease to a subsequent employer.

646 P.2d at 1337 (emphasis added).

*Bracke* appears analogous to our case. We are unpersuaded by it, however, because of its application of the legal analysis to the facts. This legal analysis relied on the extensive discussion of the last injurious exposure rule in the leading workers' compensation treatise. *See generally* Larson, *Workmen's Compensation Law,* §§ 95.00 to 95.28 (1984).[1] According to Larson, the purpose of the last injurious exposure rule is remedial. It relieves the claimant of the burden of proving the proportionate responsibility of multiple employers and their respective carriers. Larson, *supra,* § 95.24 at 17–148 to –149. It serves not to identify the employer and carrier actually responsible for the disease in a particular case, but rather to spread fairly the risk of liability for an occupational disease among the employers who expose workers to the danger of the disease and their respective carriers.

Most jurisdictions use a bright-line test to identify when the last injurious exposure occurred: the date of disability is determined and liability is imposed "by simply searching backward to find the last time when claimant was exposed to the disease-causing substance, subject of course to the jurisdiction's rules on the degree of exposure required." Larson, § 95.25(a) at 17–150 to –154 (footnotes omitted). In this context, "disability" means loss of ability to work:

> When the onset of disability is the key factor in assessing liability under the

---

1. *Bracke* apparently relied on an earlier edition. Both the petitioners and respondents completely ignore Larson's discussion.

last-injurious-exposure rule, it does not detract from the operation of this rule to show that the disease existed under a prior employer or carrier, or had become actually apparent, or had received medical treatment, or, indeed ... had already been the subject of a claim filed against the prior employer, so long as it had not resulted in disability.

*Id.* at 17–154 (footnotes omitted).

■ Statutes may prescribe the measure of an injurious exposure for particular diseases. *Cf.* A.R.S. § 23–901.02 (for silicosis or asbestosis, the employer liable is the last one at which the employee was exposed to harmful quantities of silicone dioxide dust for at least two years). Absent a statutory prescription, most jurisdictions require no more than *some* exposure of a kind that could cause the disease. Larson, § 95.-26(a). A minority requires an exposure of such a length or degree that it could have *actually* caused the disease. Once disability develops, however, a mere recurrence of symptoms does not shift liability to a subsequent employer or carrier. *Id.* § 95.27.

■ Whether the measure of an injurious exposure is *any* exposure of a kind that could cause the disease or an exposure sufficient to have actually caused the disease, proof that a particular exposure *in fact* caused the disease is not required.

*Bracke* reached its result by concluding that (1) under Oregon law the claimant became disabled while working for the first employer and (2) after this disability, the subsequent exposures caused mere recurrences of symptoms without aggravating the underlying disability. *Matter of Compensation of Bracke*, 646 P.2d at 1330, 1336–37.

■ In our case, analogous conclusions do not follow. First, under Arizona law, "disability" means "an earning capacity disability." *Alsbrooks v. Industrial Commission*, 118 Ariz. 480, 578 P.2d 159 (1978). This definition is consistent with the bright-line majority rule. Larson, § 95.25(a) at 17–154. In the instant case, the evidence is uncontradicted that although claimant sought medical treatment beginning in 1978, she became disabled only after her exposure at Merrill. She therefore did not become disabled working for Fosgate while American was at risk.

■ Second, the rule that a mere recurrence of symptoms does not shift liability is not directly applicable to claimant's exposures after American was at risk. An initial disability triggers the recurrence rule:

> [W]hen disability has once resulted from occupational disease, a second disability occurring under a different carrier will be chargeable to the first carrier if it is a recurrence of the first disabilty.

Larson § 95.27 at 17–171 to 172. Because "disability" means a loss of the ability to work, the triggering disability occurred after claimant's exposures at Merrill.

Even if we were to assume that exposures after sensitization that produce merely transitory symptoms would not shift liability from the employer and carrier at risk when sensitization occurred, *cf. Hughes Aircraft Co. v. Industrial Commission*, 129 Ariz. 233, 630 P.2d 56 (App.1981) (claimant became permanently sensitized to coolant oil and thereafter developed transitory dermatitis whenever exposed to it), this rule is inapplicable to the instant case. Dr. Clark distinguished the underlying sensitivity, the symptoms from exposure to the solder flux allergen, and the consequent damage to pulmonary function. Although he admitted that exposure after sensitization did not worsen the sensitization per se and that the exposures at Merrill did not worsen claimant's symptoms, Dr. Clark repeatedly asserted that exposures subsequent to sensitization increased the risk of *permanent* lung damage.

The administrative law judge misevaluated this testimony by ignoring these distinctions. He also mischaracterized this testimony as speculative. Dr. Clark speculated about the *degree* of damage from exposures subsequent to sensitization, not about the *risk* of damage from these exposures. Dr. Clark's testimony therefore satisfied the last injurious exposure rule.

In this context, Premier argues that proof of an actual worsening is necessary because the employment must proximately cause the disease. A.R.S. § 23–901.01(3). This proximate causation requirement is, however, consistent with the last injurious exposure rule. A claimant's employment as a whole must proximately cause the disease. Once the causation requirement is satisfied, the last injurious exposure rule applies to allocate liability.[2]

Moreover, Premier mistakenly relies on industrial injury cases. *E.g. New Pueblo Constructors v. Industrial Commission,* 115 Ariz. 236, 564 P.2d 925 (App.1977); *Slayton v. Industrial Commission,* 26 Ariz.App. 578, 550 P.2d 246 (1976); *Montgomery Ward Co. v. Industrial Commission,* 14 Ariz.App. 21, 480 P.2d 358 (1971). Because claimant's injury is an occupational disease, A.R.S. § 23–901.02 determines the employer and carrier exclusively liable for it. *See Phoenix Pest Control,* 134 Ariz. at 219–20, 655 P.2d at 43–44.

The administrative law judge also discounted Dr. Clark's opinion because it was inconsistent with his recommendation that claimant continue working despite her reaction to the exposures at Merrill. We find no inconsistency. Dr. Clark initially assumed he could medically manage claimant's allergic reaction. Once it became apparent that he could not and therefore the danger of permanent pulmonary damage continued, Dr. Clark immediately recommended that claimant quit to avoid further exposures.

Premier also argues that even if the administrative law judge misevaluated Dr. Clark's testimony, it merely conflicted with the testimony of other experts. Assuming, without deciding, that the medical evidence conflicted, this conflict is not a basis for affirming the award. The administrative law judge has authority to resolve conflicting medical opinions, and this court will not substitute its judgment for his. *See, e.g., Stephens v. Industrial Commission,* 114

Ariz. 92, 559 P.2d 212 (App.1977). But this rule applies only if the administrative law judge accurately evaluates the conflicting opinions. *Cf. State Compensation Fund v. Industrial Commission,* 24 Ariz.App. 31, 535 P.2d 623 (1975) (award set aside because hearing officer ignored medical testimony that he mistakenly considered too speculative to support an award). The rule therefore does not apply here.

For the foregoing reasons, exclusive liability for claimant's occupational disease was erroneously imposed on Fosgate while American was at risk.

Award set aside.

EUBANK and KLEINSCHMIDT, JJ., concur.

---

2. Even if the proximate causation requirement were to require proof that an exposure could have actually caused the disease, Dr. Clark's testimony established that the exposure at Merrill could have actually caused sensitization and some worsening of pulmonary function.