703 P.2d 453

Edward F. FORD, Petitioner Employee,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Phelps Dodge Corporation, New Cornelia Branch, Respondent Employer,

State Compensation Fund, Respondent Carrier.

No. 17585–PR.

Supreme Court of Arizona, En Banc.

June 5, 1985.

Reconsideration Denied Aug. 20, 1985.

Hocker & Axford by R. Kelly Hocker, Tempe, for petitioner.

Sandra A. Day, Chief Counsel, Industrial Com'n, Phoenix, for Industrial Com'n.

Evans, Kitchel & Jencks by Julie A. Doherty, Phoenix, for Phelps Dodge and State Compensation Fund.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshear by J. Victor Stoffa, Phoenix, amicus curiae, for Transamerica Ins. Co.

Davis, Eppstein & Hall, P.C. by Robert W. Eppstein and Philip Hall, Phoenix, amicus curiae, for Southern Ariz. Workers' Compensation Atty. Ass'n.

FELDMAN, Justice.

Claimant is a disabled worker seeking benefits under the Arizona Workers' Compensation Act (the Act), A.R.S. § 23–901 et seq. The Act is constitutionally mandated to provide compensation for employees who suffer injury "from any accident arising out of and in the course of employment." Ariz. Const. art. 18 § 8. Claimant's disability is allegedly one which falls within the occupational disease portion of the Act.

The issues presented are, first, whether a claimant whose disability is attributable to a work-related disease must proceed under the special provisions of the Act relating to occupational disease, or whether he may elect to proceed under the general provisions relating to accidental injuries. The second question is whether, under the occupational disease provisions of the Act, compensation is limited to diseases in which work exposure was the sole cause of the condition or whether it must also be paid where work exposure was a contributing cause of the eventual disability.

We granted review to examine both issues, believing them to be matters of considerable public importance which have long beset our courts. Rule 23, Ariz.R.Civ.

App.P., 17A A.R.S. We have jurisdiction under Ariz. Const., art. 6, § 5(3).

### FACTS

Claimant began work in the Phelps Dodge New Cornelia mine in May of 1959. He worked primarily in the crushing operation and was continually exposed to heavy concentrations of dust and other industrial irritants. For over twenty-two years of employment, claimant had colds and bronchial problems. He testified that he began coughing in about 1969 and from that point on he regularly coughed up mucous. The records introduced at the hearing indicate that claimant had indications of bronchitis as early as 1973. He was hospitalized in 1978 for a hernia operation and at that time also underwent respiratory therapy. In early 1979, claimant had a sudden onset of fever accompanied by a dry, hacking cough. He was treated at Phelps Dodge's New Cornelia hospital. X-rays at that time showed some lung infiltrates. According to the treating physician, Dr. Blaisdell, claimant's symptoms and the x-rays were compatible with a diagnosis that claimant had contracted an acute infection caused by a viral, bacterial, or fungal agent. Claimant was treated on that basis, and his fever improved, although the cough persisted. Claimant became so debilitated as a result of the cough that he was forced to retire in March of 1981. He testified at the hearing that at the time of his retirement he was weak, nervous, coughing, bringing up mucous, had chills and sweats and that he lost his breath with any exertion, no matter how minor.

In April of 1981, claimant was hospitalized at Good Samaritan Hospital in Phoenix. Dr. Serbin, a specialist in pulmonary diseases and internal medicine, was called to consult on claimant's pulmonary condition. Dr. Serbin later testified at the hearing that he could not reach a definite conclusion with respect to the cause of plaintiff's troubles. According to Dr. Serbin, none of plaintiff's symptoms were necessarily indicative of viral or bacterial infection; they might have been attributable to

inhalation of dust or gas fumes at the work place. Dr. Serbin noted that claimant's coughing had "decreased significantly" since he had retired from work. He stated his opinion that something in the work environment had either caused or contributed *to the cough.* However, he later explained in his testimony that his recommendation that claimant not return to work was not based on an opinion that there was any causal relationship between the work environment and the cough, but only on his opinion that "any type of noxious stimulant to the lungs might aggravate [claimant's] pre-existing cough of undetermined etiology."

Another pulmonary specialist, Dr. Lipschultz, testified at the hearing. It was his opinion that "at the very least, the work environment exposure had significantly aggravated claimant's underlying *condition.*" (Emphasis supplied.) Dr. Lipschultz stated that "if claimant had not been exposed to [the work environment], he would not have the kind of problem that he has today." On the other hand, Dr. Blaisdell testified that there was no causal relationship between the work exposure and claimant's disability. At the conclusion of the hearing, the administrative law judge (ALJ) denied all compensation. Although claimant had sought benefits under the general provisions of the Act, the ALJ held that the claim "must be considered under A.R.S. § 23–901(12)(c) and § 23–901.01, the occupational disease sections of the [Act].... The ... testimony and reports do not establish the six conjunctive compensability requirements of ·23–901.01."

In affirming the award, the court of appeals held that the occupational disease provisions of the Act are exclusive and must be applied to claims which fit the concept of occupational disease, as defined in the Act. It held, further, that no compensation may be paid to a worker whose pre-existing non-occupational disease is aggravated by the conditions of his employment. Claimant argues in his petition for review that the combined effect of these two holdings is to unconstitutionally dimin-

ish workers' compensation coverage from that mandated by article 18, § 8.

We hold that a condition which is an occupational disease under the definitions of the Act must be considered under the special provisions applicable thereto. To that extent we approve the holding of the court of appeals. We hold, further, however, that the Act may not be interpreted so restrictively as to limit payment of compensation for an occupational disease only to cases where claimant is able to establish that work exposure was the sole cause of the ultimate, disabling disease.

## CHARACTERIZATION OF THE CLAIM

The first question we address is whether a claimant suffering from an "occupational disease" may proceed with his claim as if it were one arising out of an "ordinary accident" related to his employment, or whether he must proceed under the special provisions of the Workers' Compensation Act relating to occupational disease. This question, which would seem to answer itself has vexed Arizona courts for over fifty years. One of the findings of the ALJ in this case was that claimant had not met the burden of complying with the requirements of A.R.S. § 23–901.01. Claimant argues that he cannot be held to those requirements because he had an election to proceed under either the "ordinary" workers' compensation law or the Occupational Disease Law and its special requirements as set forth in A.R.S. § 23–901(12)(c) and §§ 23–901.01 to 23–901.05.[1]

In *Pierce v. Phelps Dodge Corp.*, 42 Ariz. 436, 26 P.2d 1017 (1933), this court first considered whether the workers' compensation statute covered a situation where the conditions of employment had aggravated an underlying heart condition and brought about an acute attack, causing death. Pointing out that § 1421 of the Revised Code of 1928 provided for compensation when an employee had been "injured ... by accident," this court acknowledged that "accident" might refer either to the unexpected event which was the cause of the injury or to the later, unexpected manifestation of the injury. Under the first interpretation, an occupational disease resulting from a long continued work exposure would not be covered because it would not have been caused by an "accident." Under the second interpretation, however, there would be compensation because the injury—the manifestation of the disease—was "accidental." Since the statute contained requirements of both injury and accident, this court concluded "that on reason, notwithstanding there are many authorities to the contrary, ... the word 'accident' refers to the cause of the injury and not to the injury itself." *Id.* at 445, 26 P.2d at 1021. Thus, we held that compensation could be paid only when the result was caused by "an undesigned, sudden and unexpected event." *Id.* at 446, 26 P.2d at 1021.

Following *Pierce*, compensation was not paid for industrial diseases unless an unexpected event had caused an injury which, in turn, "produced or aggravated" the disease. *Id.* Disease caused by gradual day-to-day exposure in the work place was uncompensated. *See, e.g., Rowe v. Goldberg Film Delivery Lines*, 50 Ariz. 349, 72 P.2d 432 (1937). In 1943, the legislature enacted the first occupational disease law. Laws 1943, Ch. 26. Under this statute, compensable occupational diseases were limited to those expressly listed, and the benefits were "substantially less favorable to the disabled workman than those available under the general workmen's compensation laws." *Phoenix Pest Control v. Industrial Commission*, 134 Ariz. 215, 218, 655 P.2d 39, 42 (App.1982).

---

**1.** Section 23–901.01 contains special provisions pertaining to causation in occupational disease cases. Section 23–901.02 contains special rules pertaining to the allocation of the loss between multiple employers. Section 23–901.03 requires the appointment of a committee of expert medical consultants in occupational disease cases. Section 23–901.04 contains provisions pertaining to self-exposure and disobedience of employer-made safety rules, while § 23–901.05 pertains to aggravation issues in occupational disease cases.

In the first case discussing that statute, this court followed *Pierce,* holding that the right to compensation for disability resulting from work-related disease was not recognized at common law unless "incidental to some other acts of negligence," and that compensation for occupational diseases was not mandated by those provisions of article 18, § 8 of the Arizona Constitution which required the legislature to enact a workers' compensation law. *Industrial Commission v. Frohmiller,* 60 Ariz. 464, 468–69, 140 P.2d 219, 221 (1943).[2] In fact, the latter point was conceded. *Id.*

The restrictive interpretation articulated in *Pierce* did not persist for long. In 1944, noting "that this court is not bound by its former decisions, unless the declarations of principles in such ... cases commend themselves by their essential soundness," we disapproved of the essential rationale of *Pierce. In re Mitchell,* 61 Ariz. 436, 450, 150 P.2d 355, 361 (1944). We held that compensation was payable to a worker who had inhaled carbon tetrachloride fumes which had "produced effects that were not intended, foreseen, or expected." *Id.* at 452–53, 150 P.2d at 361. After *Mitchell,* and no doubt because of the restrictive coverage and benefits provided by the 1943 occupational disease law, this court

> expanded the normal concept of 'injury by accident' so as to allow compensation under the workmen's compensation laws for disabilities resulting from employment related diseases not specifically listed in the occupatoinal disease statutes. In essence, if employment related causation could be shown, the Arizona courts considered nonlisted occupational diseases to be compensable, not as occupational diseases, but rather as 'injuries by accident' under Arizona's workmen's compensation act.

*Phoenix Pest Control,* 134 Ariz. at 218–19, 655 P.2d at 42–43 (citations omitted).

Finally, in 1973 the legislature repealed all of the existing occupational disease statutes and adopted a new statute. *See* Laws 1973, Ch. 53, § 2. The 1973 statute deleted the list of specific diseases and made provision for occupational disease by incorporating it within the definition of "personal injury by accident" in the Workers' Compensation Act. The effect of this was to include occupational diseases "within the general coverage of the Workmen's Compensation Act." *Phoenix Pest Control,* 134 Ariz. at 219, 655 P.2d at 43. The current statute handles the problem in the same manner and is identical to the 1973 law. The definition section of the current Act provides as follows:

12. "Personal injury by accident arising out of, and in the course of employment" shall be defined as:

(a) Personal injury by accident arising out of, and in the course of employment, or

\* \* \* \* \* \*

(c) An occupational disease which is due to causes and conditions characteristic of and peculiar to a particular trade, occupation, process or employment, and not the ordinary diseases to which the general public is exposed, and subject to the provisions of § 23–901.01.

A.R.S. § 23–901.

Our initial question, therefore, is whether, by merging the Occupational Disease Act into the general Workers' Compensation Act, the legislature intended that all occupational disease claims be processed under the special provisions pertaining thereto, or whether it is still possible for a worker suffering from an occupational disease to disregard those special provisions (§§ 23.901.01, et seq.) and proceed as if he had a "regular" workers' compensation claim based upon the type of accidental injury required by *Pierce.* Such an election had been permitted, prior to 1973, in

---

2. It may be of some historical interest to note that the case did not arise over an injury at all, but over the refusal of the state auditor, Frohmiller, to pay a $4.00 claim for a typewriter which the Industrial Commission rented from an office supply company in order to perform its statutory duty of putting the occupational disease law "into effect." The auditor refused to pay the claim on the ground that the occupational disease statute was unconstitutional.

cases such as *Mead v. American Smelting & Refining Company*, 90 Ariz. 32, 363 P.2d 930 (1961), and *Reilly v. Industrial Commission*, 1 Ariz.App. 12, 398 P.2d 920 (1965). Of course, these cases were decided at a time when the occupational disease statute covered only certain listed occupational diseases. They held that unlisted occupational diseases were compensable, not as occupational diseases, but rather as "injuries by accident" under the Arizona workers' compensation act. *Mead*, 90 Ariz. at 38, 363 P.2d at 934; *Reilly*, 1 Ariz.App. at 15, 398 P.2d at 923.

The identical question was presented in *Phoenix Pest Control, supra*. The court of appeals there held that since the 1973 amendments had brought all occupational diseases within the ambit of the Workers' Compensation Act, there was no longer any reason to allow for the dual procedure.

> There would have been no reason to repeal [the former statutes] if the [legislative] intent had been to continue to restrict the application of the statutes governing the processing of occupational disease claims to those occupational diseases which were previously listed in the statute.

*Id.* 134 Ariz. at 220, 655 P.2d at 44. We agree with this reasoning. We believe, also, that the legislature might well have intended to delete the list of specific occupational diseases in the prior law so as to enable the workers' compensation system to handle new disease conditions as they were recognized and identified through advances in medical science.

■ Review by this court was not sought from the decision in *Phoenix Pest Control*. The holding of that case has been questioned both in the case at bench and in others. We deem it appropriate, therefore, to expressly approve and adopt the following from *Phoenix Pest Control:*

> We conclude that under our present statutory scheme, when the condition giving rise to the claim for workmen's compensation benefits is a disease, either party is entitled to require that the claim be administered pursuant to the provisions

of the workmen's compensation act governing occupational disease. Any other conclusion would have the effect of completely nullifying all statutory provisions governing the administration of occupational disease claims, since, as observed by the carrier, if the option to file the claim as an occupational disease claim is left solely to the claimant such an option 'would be exercised only by the most blatant of malpractitioners.'

*Id.* at 221, 655 P.2d at 45 (footnote omitted).

## STANDARD OF PROOF FOR CAUSATION

Having held that the occupational disease provisions of the Workers' Compensation Act governed the claim, the ALJ found that claimant had failed to prove the six "conjunctive" causal requirements prescribed by A.R.S. § 23–901.01. That statute, first enacted as part of the 1973 Occupational Disease Act, A.R.S. § 23–1102, provides as follows:

> The occupational diseases as defined by [§ 23–901(12)(c) ] shall be deemed to arise out of the employment only if all of the following six requirements exist:
> 1. There is a direct causal connection between the conditions under which the work is performed and the occupational disease.
> 2. The disease can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment.
> 3. The disease can be fairly traced to the employment as the proximate cause.
> 4. The disease does not come from a hazard to which workmen would have been equally exposed outside of the employment.
> 5. The disease is incidental to the character of the business and not independent of the relation of employer and employee.
> 6. The disease after its contraction appears to have had its origin in a risk connected with the employment, and to have flowed from that source as a natu-

ral consequence, although it need not have been foreseen or expected.

Claimant contends that even if the evidence is not sufficient to support a finding of sole cause under § 23–901.01, it does establish a work-related aggravation of a prior non-industrial disease. The court of appeals, 145 Ariz. 593, 703 P.2d 537 (App. 1984), concluded that, by enacting § 23–901.01, the legislature had precluded compensability of "mere aggravation of a pre-existing disease." At 596, 703 P.2d 540. The court stated its holding as follows:

> In light of our legislature's choice to require that the claimant prove causation to sustain his claim under the workmen's compensation laws pertaining to occupational disease, we must hold that mere aggravation of a pre-existing disease is not compensable. Any other conclusion would have the effect of completely nullifying the statutory provisions pertaining to occupational disease claims, since claimants would, as a matter of course, file the claim as an occupational disease and alternatively as an aggravation of a pre-existing disease, thereby avoiding the necessity of proving causation.

At 597, 703 P.2d at 541.

This holding by the court of appeals was gratuitous, since the employer had not contended that § 23–901.01 precludes compensation for work-related aggravation of a non-compensable non-industrial condition. In fact, the employer has assiduously avoided that argument, contending consistently throughout these proceedings that claimant has simply failed to establish any causal relationship between his present disease and his working conditions. Claimant contends in his petition for review that the effect of the holding by the court of appeals is to limit compensation for occupational disease to cases in which work-related conditions are the sole cause of the disease. This, claimant argues, is contrary to the constitutional mandate of article 18, § 8.

The employer contends that claimant may not raise the constitutional issue since it was not raised before the ALJ. We do not believe this position to be well taken. The employer had not argued that § 23–901.01 must be interpreted so as to require proof of sole or exclusive causation, nor had the ALJ made such a finding. The ruling on "mere aggravation" appeared for the first time in the court of appeals opinion. We believe, therefore, that claimant's contention that such a construction of the statute is unconstitutional was timely when made in the petition for review filed after the court of appeals decision.

A. *Is a "Sole Cause" Requirement Contrary to the Arizona Constitution?*

Article 18, § 8 of the Arizona Constitution requires the legislature to enact a workers' compensation law

> by which *compensation shall be required* to be paid ... in case of ... injury [or] death ... *if* in the course of such employment personal *injury* to or death of any such workman from any accident arising out of and in the course of, such employment, *is caused in whole, or in part, or is contributed to,* by a necessary risk or danger of such employment, or ... inherent in the nature thereof.... (Emphasis supplied.)

Claimant argues that any interpretation of § 23–901.01 which conditions compensation on proof of sole or exclusive causation violates the emphasized language of the constitution. This argument is correct only if an occupational disease is the type of "injury" encompassed by the constitutional mandate for enactment of a workers' compensation law. This inquiry brings us back to the vexatious problem of whether an occupational disease is an injury by accident and thus within the coverage of the workers' compensation law.

As we indicated, *ante* at 455, this court held in 1933 that because the statute contained both the words "accident" and "injury," the fact that the injury itself was accidental was not sufficient. There must also have been "an unexpected event" which caused the injury. *Pierce v. Phelps Dodge Corporation, supra.* In reaching that result, the court explicitly rejected the

contrary interpretation given by the English courts to the original workers' compensation law adopted by the British Parliament in 1897. 42 Ariz. at 442, 26 P.2d at 1020 (citing *Fenton v. Thorley*, A.C. 443 (1903)). Considerable doubt was thrown upon the viability of the *Pierce* rule in *In re Mitchell, supra,* where this court held that compensation was payable to the dependents of an employee who died of liver and kidney disease secondary to work-related carbon tetrachloride poisoning. Although the court commented upon the suddenness of the injury ("acute" nephrosis) and the unusual working conditions, it reversed the *Pierce* requirement of a sudden traumatic event to establish an "accident." Judge Levi Udall (later Chief Justice), writing for a unanimous court, focused instead on the following:

> No one expected, anticipated or looked for the poisoning and death to deceased. The result was undesigned and unexpected. It was therefore an event which took place without one's foresight or expectation and hence a fortuitous happening.

> We hold, therefore, anything we may have said in the Pierce case to the contrary notwithstanding, that there was an injury by accident in this case within the meaning of the Arizona law, as now interpreted, in that the inhalation by the deceased of the fumes ... produced effects that were not intended, foreseen or expected. This was an unlooked for mishap, an unexpected, unusual and extraordinary event not reasonably contemplated as a part of normal conditions of employment.

*Id.,* 61 Ariz. at 452–53, 150 P.2d at 361–62. Earlier in the opinion, the court had acknowledged that compensation could not be paid "if we strictly adhere to the accident rule laid down in the *Pierce* case." *Id.* at 450, 150 P.2d at 361. The court stated its belief that the legislature had intended to obey the constitutional mandate to pay compensation for injury or death from accident if it was "caused in whole, or in part, or ... [was] contributed to" by employment. *Id.* at 450–51, 150 P.2d at 361.

In later cases, this court adhered to the *Mitchell* view. In *Dunlap v. Industrial Commission,* 90 Ariz. 3, 363 P.2d 600 (1961), we stated:

> The terms 'disease' and 'accident' are no longer considered mutually exclusive. Any disease is compensable under our statute which follows as a natural consequence of any injury which has qualified independently as accidental.... The disease of pneumonia contracted by petitioner in this case flowed directly from the unusual and unexpected condition surrounding his employment.... We hold the disease of pneumonia [contracted as a result of exposure to exhaust fumes and other irritating gases in the work place] to be an accidental result of a combination of unusual circumstances and that therefore it is compensable.

*Id.* at 8, 363 P.2d at 603–04. Compensation in *Dunlap* was allowed under the Workers' Compensation Act, not under the Occupational Disease Law. *See also Mead v. American Smelting & Refining Co., supra; English v. Industrial Commission,* 73 Ariz. 86, 237 P.2d 815 (1951). In 1965 Justice Cameron, then a judge of the court of the appeals, reviewed some of the cases cited earlier in this opinion and concluded as follows:

> From the reading of these cases, we find that the law in Arizona is that when a condition has developed, not instantaneously, but gradually, over a period of time, resulting in a definite though unexpected injury or disease, which injury or disease is definitely work-connected, then said injury or disease is the result of an 'accident' within the terms of our Workmen's Compensation Act; and is compensable.

*Reilly v. Industrial Commission,* 1 Ariz. App. at 15, 398 P.2d at 923. The disease considered in *Reilly* was not covered under the provisions of the then existing Occupational Disease Law, A.R.S. § 23–1101 *et seq.*

When the issue next returned to this court, we held:

We conclude that while it is to be recognized that there is authority to the contrary, this state has clearly been committed to the view over many years that the inhalation of poisonous compounds and dust having a detrimental effect upon the lungs and other vital organs is *compensable under Article 18, § 8, of Arizona's constitution.* We think this is true where there has been a sudden onslaught of damage from silicon dust, ... or where there is a gradual deterioration through protracted exposure and an accident has been found by treating each impact or inhalation of silicon dust as a miniature accident in itself leading to the ultimate disability, ...

*Marquez v. Industrial Commission,* 110 Ariz. 273, 275, 517 P.2d 1269, 1271 (1974) (emphasis supplied). Again, the disease in this case was not covered by the Occupational Disease Law; therefore, as the holding indicated, compensation was payable for "accidental injury" as specified in article 18, § 8.

*Marquez* was not the last word. It was followed a year later by a case in which this court held that where a worker's "specific disability is compensable" under the Occupational Disease Law, "he is excluded from compensation under the Workmen's Compensation Law." *Featherman v. Industrial Commission,* 112 Ariz. 52, 54, 537 P.2d 922, 924 (1975). Later that year, the court of appeals noted the conflict between *Marquez* and *Featherman,* and held that an industrial disease not among those enumerated in the pre-1973 statute was not compensable under the Workers' Compensation Act. *State Compensation Fund v. Yazzie,* 25 Ariz.App. 89, 92, 541 P.2d 415, 418 (1975).

Depending upon which line of cases one prefers to ignore, it may be argued with some plausibility that with ample precedent we may adopt either view of the issue. We believe, however, that the better interpretation is the one set forth in *Mitchell, supra,* and confirmed in *Marquez v. Industrial Commission, supra. Mitchell* pointed out that our statute (and, presumably, the preceding constitutional provision) was based on one adopted by Utah and that both the Utah rule and the English rule, interpreting the original Workmen's Compensation Act of 1903, had not been so restrictive. *Id.* We also noted that *Pierce* failed to consider the requirement of article 18, § 8 that compensation "shall" be paid for injuries which are "caused in whole, or in part, or ... [are] contributed to" by the risks of employment. *Id.* 61 Ariz. at 451, 150 P.2d at 361. We stated that "construction of the [statute] must be governed by the constitutional provision." *Id.*

■ We recognize that *Mitchell* attempted to differentiate between those diseases which are the result of short, unusual exposures and those which are the result of long or chronic exposures under the usual conditions of employment. We do not believe that such a distinction is valid. It was the intent of the framers of our constitution that industry be made to compensate for the human cost of producing goods and materials. Bakken, *The Arizona Constitutional Convention of 1910,* 1978 Ariz.St. L.J. 1, 19. It seems of little consequence whether such costs are the result of disease produced by chronic exposure or by short and unusual exposure. Certainly, the worker who is disabled because of a lifetime of exposure to the inherent hazards of an industry is as entitled to compensation as the worker who becomes disabled after an exposure of a few weeks or days. We believe that this was the rationale adopted in *Marquez,* 110 Ariz. at 275, 517 P.2d at 1271.

■ We are persuaded by the historical treatment of occupational diseases under Arizona workers' compensation statutes and by the final conclusion, since *Marquez, supra,* that the injury in an occupational disease case is an "accident" arising out of and in the course of employment. Thus, we hold that article 18, § 8 of our constitution requires compensation for injuries attributable to occupational diseases, just as it does for injuries attributable to sudden accidents. It is not within the power of the legislature to abolish compensa-

tion for occupational diseases, nor to limit payment by imposing conditions proscribed by the constitution. This conclusion requires us to hold that the list of causative factors contained in A.R.S. § 23–901.01 is not to be interpreted as imposing a requirement that claimant establish that the industrial exposure was the sole or exclusive cause of his disease and consequent disability. Such a standard of causation would be contrary to the provisions of article 18, § 8, requiring that benefits be paid for injury or death which is "caused in whole, or in part, or is contributed to, by a necessary risk or danger" of employment.

This leaves the holding of *Featherman v. Industrial Commission, supra,* unresolved. We construe *Featherman* as simply holding that an occupational disease claim must be pursued under the special statutes pertaining to such claims rather than under the sections pertaining to injury by sudden, traumatic events. This, of course, is the explicit holding in *Phoenix Pest Control,* which we approved, *ante* at 457. Claimant argues that such a result is also contrary to article 18, § 8 of the constitution. We do not agree.

**B.** *The Legislature May Require Special Processing for Occupational Disease Claims*

■ The fact that the legislature cannot abolish compensation for injury or death for occupational disease does not mean that it cannot regulate, control, or handle compensation for occupational disease differently or separately from compensation for other work-related injuries. Similarly, although the constitutional requirements as to the type of statute which the legislature is to enact prevent it from requiring proof of sole cause, they do not prevent the legislature from specifying the factors which are to be considered in determining whether industrial exposure is a cause of an occupational disease. This, we believe, is exactly what the statute in question does. We believe that the intent of the statute was accurately characterized by respondent:

[I]n order to preserve the fundamental policy underlying all compensation statutes, namely, payment of benefits only for work-related conditions, the legislature had to enact a standard of proof ... designed to deal with the nature of [occupational disease] claims and the causation problems peculiar to them. A.R.S. § 23–901.01 is such a standard of proof ... designed to insure compensation is paid only for truly occupational diseases.

Response to Amicus Brief at 11.

■ We do not believe that the legislature intended § 23–901.01 to be construed to require proof of sole causation. First, such a standard would be unusual. *1B Larson, Workmen's Compensation Law* § 41.64(c) at 7–435 to 7–437 (1982). We believe that the purpose of special standards of causation for occupational disease cases is to insure that the disability causing the disease is one related to employment, and not one which is part of the ordinary hazards of life to which the general public is exposed. *Id.* Surely, if the legislature had intended to adopt a standard of causation so unusual with respect to other Arizona compensation claims and to occupational disease law in general, it would have used the phrase "sole cause" or "exclusive cause" in the statute. We think, also, that the enactment of A.R.S. § 23–901.05, which provides that compensation "shall be reduced and limited to such proportion only of the compensation that would be payable if the occupational disease were the sole cause of the disability or death," confirms the legislature's intent not to establish in § 25–901.01 a sole cause test for occupational disease cases.

■ In making a determination of causation, the fact finder must consider each of the factors listed in § 23–901.01. Because of the mandate of art. 18, § 8, we read these factors as tests for the finding of proximate cause and as an attempt to separate those diseases which are "occupational"—related to the hazards of the workplace—from the same diseases which are the result of non-industrial hazards to which we are all exposed.

We turn now to determine whether the award in favor of the employer should be affirmed or set aside, these being our only choices since remand for further findings is not available. A.R.S. § 23–951(D); *Wood v. Industrial Commission*, 126 Ariz. 259, 261 n. 3, 614 P.2d 340, 342 n. 3 (1980).[3]

■■■ The administrative law judge concluded that the causal requirements of § 23–901.01 had not been satisfied and therefore awarded no compensation. Our question is whether this finding was supported by the evidence. We note that the ALJ did not base his conclusions upon the interpretation adopted by the court of appeals—that "mere aggravation" was not compensable in an occupational disease setting. The administrative law judge made no specific findings at all. Specific findings are not necessary, provided that the reviewing court can determine from the evidence whether the ultimate basis given by the hearing officer for his conclusion was legally sound. *Cavco Industries v. Industrial Commission*, 129 Ariz. 429, 631 P.2d 1087 (1981); *Garcia v. Industrial Commission*, 26 Ariz.App. 313, 548 P.2d 26 (1976).

■■■ In reviewing this record, we note that the ALJ found Dr. Serbin's testimony most credible and rejected the ultimate conclusions reached by the claimant's physician. This was within the prerogative of the ALJ and will not be disturbed absent a finding of abuse of discretion. *Ortega v. Industrial Commission*, 121 Ariz. 554, 592 P.2d 388 (App.1979). Given the complex legal issues and the ALJ's failure to make specific findings, we would feel constrained to vacate the award if there were any explicit support in Dr. Serbin's testimony for the proposition that the occupational exposure had either contributed to the onset of claimant's pulmonary condition or had aggravated it. We find no such support. It is a reasonable interpretation of Dr. Serbin's testimony that the claimant's condition was of unknown etiology, and

that "conceivably" it could have been caused or contributed to by the work exposure. However, Dr. Serbin also believed that other factors might have caused or contributed to the onset of the condition. He never made a clear statement, to a reasonable medical probability, that work exposure had been the sole cause or a contributing cause of the condition.

Dr. Serbin was equally indefinite with regard to whether work exposure had aggravated whatever condition afflicted claimant. The most that can be said is that he felt that claimant's exposure to the fumes and pollutants of his work place would trigger claimant's *symptomatology*, mainly coughing, and that his advice that claimant find other work was based on that principle, and not on the conclusion that work exposure had aggravated the *condition*. As the employer points out, it is one thing to have work-related exposure aggravate a condition and another to have it merely trigger symptoms of a non-industrial condition. Dr. Serbin did not state that he believed work exposure had aggravated claimant's condition as compared to simply triggering symptomatology. Thus, the ALJ's finding that claimant failed to prove a causal connection between work exposure and the disease is supported by the evidence. Accordingly, the award is affirmed. The opinion of the court of appeals is approved in part, vacated in part.

HOLOHAN, C.J., GORDON, V.C.J., and HAYS and CAMERON, JJ., concur.

---

3. Neither party has raised the validity of this doctrine under the provisions of article 6, § 5 of the Arizona Constitution, giving this court pow-

er to make procedural rules. We do not reach the issue.