Willie JENKINS *v.* HALSTEAD INDUSTRIES

CA 85-429                                      706 S.W.2d 191

Court of Appeals of Arkansas
Division II
Opinion delivered March 26, 1986

198

*Daggett, Van Dover, Donovan & Cahoon,* by: *David W. Cahoon,* for appellant.

*Wright, Lindsey & Jennings,* for appellee.

DONALD L. CORBIN, Judge. This case involves a question of first impression concerning the interpretation of Ark. Stat. Ann. § 81-1314(a)(3) (Repl. 1976), as it relates to the apportionment rule applicable to occupational diseases.

The Commission upheld the finding by the ALJ that Ark. Stat. Ann. § 81-1314(a)(3) required apportionment of appellant Willie Jenkins' claim for total disability upon a finding that the appellant's disability was attributable 92% to cigarette smoking and 8% to the occupation. We affirm.

The appellant is a 53-year old male who began his employment with appellee Halstead Industries on January 22, 1968. Appellant had smoked cigarettes since he was 25 or 30 years of age. Appellant testified that he had been advised by Dr. Hosea Young in 1970 to change jobs and stop smoking. Appellant began having breathing difficulties after he became a quality control station inspector on March 3, 1970, when he was exposed to fumes coming from a casting furnace on a daily basis. He continued in that position until April 20, 1975, when he was placed in a packer position for two months after being treated by Dr. Hosea Young for lung problems. He then worked as a bench helper or packer until March 8, 1976. Thereafter, he worked as a rubber extruder operator, which he continued until he terminated his employment with appellee due to his physical condition. While employed as an extruder operator, appellant was exposed to a dry powdered chemical known as talc which he contends caused his pulmonary problems.

Dr. Howard Armstrong, an occupational medicine practitioner, stated that appellant's exposure in the rubber curing process resulted in a chronic obstructive pulmonary disease, commonly referred to as emphysema. Dr. Armstrong's opinion was supported by Fine and Peters, *Respiratory Morbidity in Rubber Workers,* Occupational Health Program, Jan.-Feb. 1976, at 5.

Appellee produced testimony of Dr. William L. Mason, a physician specializing in internal medicine with a sub-specialty in

lung disease. He examined appellant and inspected appellant's place of employment. He diagnosed appellant as suffering from significant chronic obstructive pulmonary disease and opined that he was totally disabled as a result of his pulmonary impairment. Dr. Mason stated that the rubber curing process could have aggravated appellant's disease but that it most likely would only have been on a temporary or intercurrent basis and would account for episodes of acute bronchitis while he was at work. He assessed appellant's impairment attributable to the work place at eight percent and concluded that that impairment developed concurrently with the other nonemployment disabling processes already well in motion. It was Dr. Mason's opinion that appellant would be permanently and totally disabled even if he had never been exposed to the conditions at appellee Halstead Industries. Appellant's impairment would continue to progress, not because of his exposure to talc or fumes at his work place, but because of the nature of his underlying severe pulmonary emphysema which was unequivocally caused by lifelong cigarette inhalation. Dr. Mason attributed ninety-two percent of his disability to cigarette inhalation.

Dr. Hosea Young began treating appellant in 1970 for emphysema and bronchitis. He stated in a report that appellant was permanently and totally disabled and that he believed "there is definitely a causal relationship between Mr. Jenkins' severe pulmonary problems and the dust and fumes he inhales at work."

Appellant contends that the full Commission erred as a matter of law when it apportioned the compensation based upon "percentages of impairment" and not upon "disability". Appellant contends that the Commission should have made a finding of "disability" which was attributable to a non-compensable infirmity and then applied the apportionment rules. He argues that even though he may have had a ninety-two percent impairment, there was no proof that there had been a ninety-two percent loss in appellant's earning capacity. Appellant further argues that the fact that he has worked with this condition for numerous years establishes that his "disability" was actually less than his anatomical impairment. Appellant asserts that the impairment was only producing a twenty-five percent disability and that his exposure to talc was "the straw that broke the camel's back."

We do not believe the Commission erred in finding that 92% of appellant's disability was attributable to smoking and 8% of his disability was attributable to his occupation. Ark. Stat. Ann. § 81-1314(a)(3) contemplates two situations wherein apportionment is appropriate. The first situation arises when an occupational disease is aggravated by any other noncompensable disease or infirmity, whereas the second situation arises when a noncompensable disability or death is aggravated, prolonged, accelerated or in any way contributed to by an occupational disease. There is substantial evidence in the record to support the Commission's finding that this is a case wherein an occupational disease was aggravated by another disease or infirmity, not itself compensable, and that apportionment was proper. Ark. Stat. Ann. § 81-1314(a)(3) provides:

> Where an occupational disease is aggravated by any other disease or infirmity, not itself compensable, or where disability or death from any other cause, not itself compensable, is aggravated, prolonged, accelerated or in any wise contributed to by an occupational disease, the compensation payable shall be reduced and limited to such proportion only of the compensation that would be payable if the occupational disease were the sole cause of the disability or death as such occupational disease, as a causative factor, bears to all the causes of such disability or death, such reduction in compensation to be effected by reducing the number of weekly or monthly payments or the amounts of such payments, as under the circumstances of the particular case may be for the best interest of the claimant or claimants.

We agree with the Commission's conclusion that the legislature did not intend for our occupational disease apportionment statute to be interpreted and applied in the same manner as our accidental injury apportionment statute, Ark. Stat. Ann. § 81-1313(f)(2)(ii) (Repl. 1976). Under § 81-1313(f)(2)(ii), apportionment does not apply unless the prior impairment was independently causing disability prior to the second injury and continued to do so after that injury. *Craighead Memorial Hospital* v. *Honeycutt*, 5 Ark. App. 90, 633 S.W.2d 53 (1982). We also agree with the Commission's conclusion in the case at bar that there is no requirement in § 81-1314(a)(3) for the non-

compensable disease or infirmity to be independently producing disability before and after the development of the occupational disease in order for it to be apportionable.

■ Ark. Stat. Ann. § 81-1314(a)(3) mandates that, when the requirements are met, the compensation shall be reduced to the proportion that the occupational disease, as a causative factor, bears to all the causes of the disability. Here, the only testimony stating the proportion, as a causative factor, that the occupational disease bore to the total disability was the testimony of Dr. Mason. He testified that the occupational disease, as a causative factor, was 8% of the cause of appellant's disability. The Administrative Law Judge determined, in accordance with Dr. Mason's testimony, that appellant had a permanent partial disability of 8%. The Commission adopted and approved that finding. That finding is amply supported by substantial evidence and the decision of the Commission is affirmed.

Affirmed.

CLONINGER and MAYFIELD, JJ., agree.