776 P.2d 797

**FRY'S FOOD STORES,**
**Petitioner Employer,**

**Fry's Food Stores, Petitioner Carrier,**

**v.**

**INDUSTRIAL COMMISSION OF**
**ARIZONA, Respondent,**

**William Steele, Respondent Employee.**

**No. CV–89–0033–PR.**

Supreme Court of Arizona,
En Banc.

July 13, 1989.

Joseph L. Moore, Phoenix, for petitioner employer/carrier.

Catherine A. Fuller, Chief Counsel, Indus. Com'n, Phoenix, for respondent.

Delaney & Melkonoff by Edgar M. Delaney and O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by J. Victor Stoffa, Phoenix, for respondent employee.

FELDMAN, Vice Chief Justice.

We review the court of appeals' decision setting aside an award in a workers' compensation case. The court held the evidence did not support the award because the doctors' testimony on which the administrative law judge presumably based her finding lacked an adequate factual foundation. We have jurisdiction under Ariz. Const. art. 6, § 5(3); A.R.S. §§ 12–120.24 and 23–948. We granted review because we believe the court of appeals erred in applying law to fact. *See* Rule 23, Ariz.R. Civ.App.P., 17B A.R.S.

### FACTS AND PROCEDURAL SUMMARY

On April 5, 1986, William Steele (claimant) became ill at work. His self-insured employer, Fry's Food Stores, accepted his claim for benefits. Fry's, however, eventually closed the claim, finding no perma-nent impairment. Claimant timely requested a hearing.

At the hearing, claimant testified that in 1979 he began working at Fry's central bakery. He spent about four years working in the dough production area, cleaning up flour and dough. He testified that a lot of flour was in the area, and he wore a mask over his nose and mouth most of the time. Then, for two years, claimant spent two hours a day exposed to flour and six hours cleaning offices and restrooms. After that, claimant again worked full time in the production area, exposed to flour.

On the day claimant became ill, he was using an air hose to blow dust from ingredient containers in the plant storeroom. At least once, he had to go outside for fresh air. Around lunchtime, he felt ill: his head hurt, his chest felt tight, and he could not breathe. He eventually fainted in the restroom. Claimant subsequently came under the care of William S. Dishner, D.O.

Claimant testified that until his injury, he smoked two packs of cigarettes a day for thirty-seven years. After the injury, he cut down to one pack a day, and quit in early 1987. Claimant acknowledged that about two years before the industrial injury, he had a lung X-ray and received treatment for breathing difficulty.

Dr. Dishner also testified at the hearing. He first saw claimant on April 9, 1986 at Phoenix General Hospital. He obtained claimant's history, which included the fainting episode, heavy flour exposure for seven to eight years, and heavy smoking. Dr. Dishner learned claimant suffered from intermittent wheezing and coughing over the previous one to two years, which improved on weekends. Claimant also told Dr. Dishner that flour dust made his breathing much worse. Claimant denied any previous history of allergies or pulmonary disease.

Dr. Dishner testified that he believed claimant suffered from baker's lung, also known as pneumoconiosis. Baker's lung results from the inhalation of foreign bodies (flour particles) that are "walled off" in the lung as a result of both the immune

and inflamatory processes. Reporter's Transcript (RT), June 16, 1987, at 23. This condition is granuloma formation and its symptoms are similar to those of asthma. Dr. Dishner stated that no specific laboratory test existed to diagnose baker's lung. Rather, the condition must be diagnosed clinically based on a patient's history, exposure to flour, symptoms, and response to treatment. Dr. Dishner concluded that claimant had sustained a ten to fifteen percent permanent impairment from prolonged exposure to flour. He expected no improvement in claimant's condition and recommended a work transfer.

Arnold M. Serbin, M.D., retained by Fry's, testified regarding his medical examination of claimant, which occurred nearly five months after the injury. He stated that baker's lung usually does not require hospitalization because it is a pure allergy to grains, with no damage to the lungs. He believed the condition reversible merely by removing the individual from exposure. Dr. Serbin concluded claimant had chronic obstructive pulmonary disease, probably caused by long-term smoking. Dr. Serbin attributed claimant's fainting episode at work to cardiac irregularity.

Dr. Serbin also testified that pneumoconiosis results from the inhalation of inorganic dusts, which causes lung scarring. Flour dust, however, is organic and would not cause lung granuloma. Dr. Serbin ultimately concluded that smoking and heart problems caused claimant's physical restrictions, not baker's lung.

On August 24, 1987, the administrative law judge (ALJ) entered an award for an unscheduled permanent partial impairment based on Dr. Dishner's testimony. On administrative review, the ALJ affirmed the award and Fry's filed a special action in the court of appeals. *See* A.R.S. §§ 23–951(A), 12–120.21(A), and Rule 10, Ariz.R.P.Spec. Act., 17B A.R.S.

The court of appeals set aside the award, finding it unsupported by the evidence. *Fry's Food Stores v. Industrial Commission of Arizona*, No. 1 CA–IC 3854, memo. decision at 12 (Ariz.Ct.App. Dec. 6, 1988). Specifically, the court of appeals found that

Dr. Dishner reached his opinion under the erroneous assumption that claimant had not worn a mask while working at Fry's bakery.

## DISCUSSION

A. General Principles

■ If the results of an industrial accident are not clearly apparent, the claimant must present expert medical testimony to establish the causal connection between his condition and his employment. *Western Bonded Products v. Industrial Commission*, 132 Ariz. 526, 527–28, 647 P.2d 657, 658–59 (Ct.App.1982). This case presented the conflicting testimony of two experts, Drs. Dishner and Serbin, on whether claimant had baker's lung. The ALJ must resolve such conflicts. *Masters v. Industrial Commission*, 15 Ariz.App. 512, 514, 489 P.2d 1214, 1216 (1971). Here, the ALJ resolved the conflict by specifically finding Dr. Dishner's testimony more persuasive than Dr. Serbin's. Finding No. 6, at 4.

■ Courts must uphold an ALJ's resolution of conflicting testimony when the evidence reasonably supports it. *See Micucci v. Industrial Commission*, 108 Ariz. 194, 195, 494 P.2d 1324, 1325 (1972). However, the court of appeals set aside this award, finding "no adequate factual foundation for Dr. Dishner's opinion," *Fry's*, memo. decision at 12, because Dr. Dishner based his opinion on the incorrect factual assumption that claimant had not worn a mask. *Id.* at 10–11 (citing *Desert Insulations v. Industrial Commission*, 134 Ariz. 148, 654 P.2d 296 (Ct.App.1982)). The court reasoned that because Dr. Dishner made his conclusion "without an accurate history his testimony had inadequate foundation and thus, is insufficient to support the award." *Fry's*, memo. decision at 11.

The court of appeals noted that according to Dr. Serbin the fact that claimant wore the mask would not have been relevant to determining whether claimant contracted baker's lung. On this point, however, the court of appeals held that the "inadequacy in Dr. Dishner's testimony

cannot be corrected by referring to a wholly separate opinion from Dr. Serbin." *Id.*

### B. The Incorrect Factual Assumption

■■■ An expert opinion based on an incorrect factual assumption may be rejected if the factual assumption was material, but not every error in fact renders the opinion fatally flawed.[1] *Desert Insulations*, on which the court of appeals relied, illustrates the difference. In *Desert Insulations*, the doctor testifying for the claimant on the question of impairment of earning capacity explicitly testified that he based his opinion on the fact that the claimant could not return to work. 134 Ariz. at 151, 654 P.2d at 299. He stated that "[i]f you could prove ... to me [that the claimant had returned to work], I'm willing to change my opinion today." *Id.* The claimant in *Desert Insulations*, however, had returned to work. Thus, the court correctly found the foundation for the doctor's testimony inadequate; the fact in question was highly material to the testimony. *Desert Insulations*, however, differs from the present case in several respects.

First, the record does not support the court of appeals' finding that Dr. Dishner placed "great significance" on the fact that claimant had not worn a mask while working. *Fry's*, memo. decision at 11. Rather, Dr. Dishner stated that he based his opinion on several aspects of claimant's history:

> He gave me a history of approximately seven to eight years of exposure, working in a—in the cleanup area, maintenance, cleaning up the bakery room in which he had significant exposure associated with brooming the room out and cleaning the room out. He related no use of the mask or any sort of protective mechanisms to protect himself from inhaling and did have a year to year and a half hiatus in his seven years, toward the end of it, which he showed some improvement, but upon returning back to the flour, and for approximately one to one and a half years, he started developing

worse and worsening symptoms as far as his breathing.

RT, June 16, 1987, at 13–14. Thus, the fact that Dr. Dishner testified that claimant wore no mask was only one part of the history he took and was mentioned only one time. Neither party asked a follow-up question and the record is silent on the significance, if any, that Dr. Dishner attached to this factor.

In addition, claimant himself testified that he thought he told Dr. Dishner that he wore a mask. RT, March 6, 1987, at 17. Thus, the record permits the inference that Dr. Dishner may have actually known that claimant wore a mask and merely misstated the fact when relating the basis of his opinion that claimant had baker's lung. This evidence did not require the ALJ to conclude that whether claimant wore a mask was an incorrect and material predicate of Dr. Dishner's opinion testimony.

Finally, even if Dr. Dishner had erroneously assumed that claimant wore no mask, there is support for the conclusion that the mask issue was irrelevant. Dr. Serbin testified that when a mask becomes wet with the wearer's breath, it becomes completely porous and only impedes inhalation of gross particles that irritate the upper airways and that the "mask would not prevent anything else." RT, June 24, 1987, at 14. The mask would have been useless as far as protection against pneumoconiosis. *See id.* This testimony reflected the key dispute in the case—the nature of the underlying disease.

Thus, even assuming that Dr. Dishner partially based his testimony on the incorrect assumption that claimant wore no mask, the ALJ could have concluded that Dr. Dishner's possibly mistaken belief that claimant wore no mask would have been an immaterial error of fact.

■■■ The court of appeals believed, however, that the factfinder could not take testimony from one expert to cure a foundational problem in the testimony of anoth-

---

1. Obviously, an opinion based on incorrect but irrelevant factual assumptions is admissible. For example, an accident reconstruction expert's estimate of speed from skid marks would be admissible even though the expert believed the car was blue when it was actually red.

er. *Fry's*, memo. decision at 11. We disagree.

. Nothing prevented the ALJ from accepting Dr. Serbin's testimony on the value of the mask but rejecting his testimony and ultimate conclusion on claimant's condition. Nothing binds the factfinder to accept or reject an expert's entire opinion. *See State v. Bishop*, 162 Ariz. 103, 107, 781 P.2d 581, 585 (1989); *State v. Zmich*, 160 Ariz. 108, 111, 770 P.2d 776, 779 (1989); *State v. Bay*, 150 Ariz. 112, 116, 722 P.2d 280, 284 (1986); *State v. Cano*, 103 Ariz. 37, 41, 436 P.2d 586, 590 (1968) (expert testimony is merely evidence the trier of fact considers and weighs). "What is true in whole is also true in part; the trier may accept part of the testimony of a witness and reject other parts." M. UDALL & J. LIVERMORE, ARIZONA PRACTICE: THE LAW OF EVIDENCE § 41, at 66 (2d ed. 1982). A factfinder is free to put together parts of expert testimony in a reasonable manner. *Buttery v. International Paper*, 47 A.D.2d 687, 688, 364 N.Y.S.2d 240, 241 (1975); *Burkan Oil Co. v. Notley*, 488 P.2d 1277, 1279 (Okl.1971); *Cassidy v. Harding*, 451 P.2d 698, 699 (Okl.1969) (award may be "based in part on claimant's medical evidence and, in part, on respondent's").

### CONCLUSION

We cannot conclude that the record requires a finding that the possible error about whether claimant wore a mask was necessarily a material, incorrect factual foundation of Dr. Dishner's opinion. Probably for their own reasons, both lawyers refrained from exploring the subject with Dr. Dishner. Consequently, no basis exists to reject the ALJ's finding that Dr. Dishner was more persuasive than Dr. Serbin in testifying as to the cause of claimant's condition.

The evidence reasonably supports the award. We affirm the award and vacate the court of appeals' decision.

GORDON, C.J., and CAMERON and MOELLER, JJ., concur.

CORCORAN, J., recused himself and did not participate in the determination of this case.