824 P.2d 746

William Boyd PARKER and Martha Lynn Parker, husband and wife, Third Party Plaintiffs/Appellants,

v.

Leonard David VANELL, Third Party Defendant/Appellee.

No. CV–90–0445–PR.

Supreme Court of Arizona, En Banc.

Jan. 21, 1992.

Kern and Wooley by D.L. Greer, Robert L. Greer, Cheryl L. Sivic, Mesa, for third party plaintiffs/appellants.

Turley & Swan, P.C. by Joseph B. Swan, Jr., Richard N. Crenshaw, Phoenix, for third party defendant/appellee.

## OPINION

CORCORAN, Justice.

This case requires us to construe for the first time the phrase "common liability" as used in various provisions of Arizona's Uniform Contribution Among Tortfeasors Act (UCATA), A.R.S. §§ 12–2501 to –2509. Because this is an issue of first impression, and because UCATA's significance continues to increase as more and more cases are filed alleging multiple theories of liability against multiple defendants, we granted review. *See* rule 23, Arizona Rules of Civil Appellate Procedure. We have jurisdiction under Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

### Factual and Procedural Background

On February 26, 1984, Leonard David Vanell (Mr. Vanell) was driving his car on U.S. Highway 60 en route to his home located off San Carlos Drive in Globe, Arizona. Traveling with him was his wife Norma (Mrs. Vanell).

Driving a short distance behind the Vanells was William Boyd Parker (Mr. Parker). As Mr. Vanell approached the intersection of U.S. Highway 60 and San Carlos Drive, he turned on his blinker signalling his intent to turn left off of the highway and on to San Carlos Drive. Without checking his rear view mirror or his door-mounted mirror on the driver's door and without looking back, Mr. Vanell began to

turn. As he turned, Mr. Parker attempted to pass him to the left. The two cars collided. As a result of the collision, Mrs. Vanell sustained serious and permanent injuries.

In November 1985, Mrs. Vanell filed a negligence action against Mr. Parker and his wife Martha (the Parkers). The Parkers, in turn, filed a third-party complaint against Mr. Vanell, alleging that his negligence caused the collision, and seeking contribution under UCATA. After lengthy discovery, the Parkers' insurance company offered Mrs. Vanell $100,000, the policy limit, for the release of the Parkers and Mr. Vanell. Mrs. Vanell accepted the offer.

Mrs. Vanell also received $65,000 from her insurance carrier under an underinsured motorist provision. This amount compensated Mrs. Vanell for the remainder of her damages.

After Mrs. Vanell released the Parkers and her husband from liability, the Parkers' contribution claim against Mr. Vanell proceeded to trial. The trial court found Mrs. Vanell's total damages to be $165,000. The trial court also found Mr. Parker 65% at fault and Mr. Vanell 35% at fault in causing those damages. These factual findings are not in dispute.

Applying UCATA to these findings, the trial court determined the Parkers' and Mr. Vanell's "common liability" to be $165,000. The trial court made this determination by equating the parties' common liability with the total damages sustained by Mrs. Vanell which were caused by the negligence of Mr. Parker and Mr. Vanell. After making this determination, the trial court multiplied the common liability of $165,000 by Mr. Parker's percentage of fault, and found the Parkers' pro rata share of the common liability to be $107,250 ($165,000 × 65%). Because the Parkers had paid only $100,000 to Mrs. Vanell, and their pro rata share of the common liability was $107,250, the trial court concluded that the Parkers were not entitled to contribution from Mr. Vanell. *See* A.R.S. § 12–2501(B) ("The right of contribution exists only in favor of a tortfeasor who has paid *more*

*than* his pro rata share of the *common liability....*") (emphasis added). Accordingly, the trial court entered judgment in favor of Mr. Vanell and awarded him costs as the prevailing party.

On appeal, the Parkers argued that the trial court erred in determining that the parties' "common liability" was the $165,000 total damages amount. The Parkers asserted that the parties' common liability was the $100,000 settlement amount, because that is the amount that extinguished or discharged the Parkers' and Mr. Vanell's liability.

The court of appeals agreed and held that the parties' common liability "was fixed by the amount paid for the settlement agreement...." *Parker v. Vanell*, 167 Ariz. 55, 57, 804 P.2d 784, 786 (App.1990). Based on its holding that the parties' common liability was fixed by the $100,000 settlement amount, the court of appeals multiplied the common liability of $100,000 by Mr. Parker's percentage of fault, and found the Parkers' pro rata share of the common liability to be $65,000 ($100,000 × 65%). Because the Parkers had paid $100,000 to Mrs. Vanell, and their pro rata share of the common liability was only $65,000, the court of appeals reversed the trial court and remanded the case for entry of judgment in favor of the Parkers and against Mr. Vanell in the amount of $35,000 plus costs.

We believe that the trial court properly construed the phrase "common liability" and correctly entered judgment in favor of Mr. Vanell.

### Discussion

Our review of the trial court's construction of the phrase "common liability," as used in various UCATA provisions, presents a question of law and is therefore reviewed *de novo*. *Tovrea Land & Cattle Co. v. Linsenmeyer*, 100 Ariz. 107, 114, 412 P.2d 47, 51 (1966). The phrase "common liability" is not defined in UCATA. We therefore construe the phrase "common liability" in accordance with the rules of construction established by the Arizona legislature. *See* A.R.S. §§ 1–211 to –218 (gen-

eral rules of statutory construction). We begin by setting forth the actual language of the relevant UCATA provisions, A.R.S. §§ 12–2501(A), (B) and (D), and –2503(D).

§ 12–2501. Right to contribution

A. Except as otherwise provided in this article, *if two or more persons become jointly or severally liable* in tort for the same injury ..., *there is a right of contribution among them....*

B. The right of contribution exists only in favor of a tortfeasor who has paid *more than* his pro rata share of *the common liability....*

. . . .

D. A tortfeasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor whose liability for the injury ... is not extinguished by the settlement....

§ 12–2503. Enforcement

. . . .

D. If there is no judgment for the injury or wrongful death against the tortfeasor seeking contribution, his right of contribution is barred unless he has ...:

1. Discharged by payment *the common liability....*

(Emphasis added.)

Preliminarily, we note that neither § 12–2501(D) nor § 12–2503(D)(1) eliminated the Parkers' right of contribution against Mr. Vanell. The Parkers properly preserved their right of contribution by structuring their settlement with Mrs. Vanell such that it extinguished the Parkers' *and* Mr. Vanell's liability for Mrs. Vanell's injury, *see* A.R.S. § 12–2501(D), and discharged the parties' "common liability," *see* A.R.S. § 12–2503(D)(1).

Although there is great intuitive appeal to the argument that the amount that discharged the "common liability" equals the amount of the "common liability," we must reject this construction of that phrase. Rather than relying on intuition, we believe that the legislative command that statutory "[w]ords and phrases shall be construed according to the common and approved use of the language" applies in this case. *See* A.R.S. § 1–213.

While we do not believe that the *phrase* "common liability" has a "common and approved use," we do believe that by construing the *words* "common" and "liability" according to their "common and approved use," and then combining those meanings to construe the phrase "common liability," we will remain faithful to the legislative command. According to *The Oxford English Dictionary* (*OED*), the word "common" means "[b]elonging equally to more than one ...; possessed or shared alike...." 3 *OED* 565 (2d ed. 1989). The word "liability" means "[t]he condition of being liable or answerable by law or equity." 8 *OED* 877 (2d ed. 1989).[1]

Before combining the meanings of "common" and "liability," we first note that UCATA speaks of "common liability" in terms of *a dollar amount. See, e.g.,* A.R.S. § 12–2501(B) ("The right of contribution exists only in favor of a tortfeasor who has *paid* more than his pro rata share of *the common liability....*") (emphasis added); A.R.S. § 12–2503(D)(1) (a settling tortfeasor's "right of contribution is barred unless he has ... [d]ischarged *by payment the common liability ...*") (emphasis added). Keeping this in mind, we hold that the phrase "common liability" as used in UCATA means *the dollar amount shared by joint tortfeasors for which they were* [2] *legally answerable.*

**1.** These meanings have remained unchanged since before the National Conference of Commissioners on Uniform State Laws and the American Bar Association first approved the Uniform Contribution Among Tortfeasors Act in 1939. *See* Unif.Contribution Among Tortfeasors Act Historical Note, 9 U.L.A. 230 (1957); 2 *OED* 688 (corrected re-issue 1933) ("common" means "[b]elonging equally to more than one ...; possessed or shared alike ..."); 6 *OED* 234 (corrected re-issue 1933) ("liability" means "[t]he

condition of being liable or answerable by law or equity").

**2.** We use the phrase *"were* legally answerable" instead of *"are* legally answerable" because the "common liability" of the Parkers and Mr. Vanell became relevant only after Mrs. Vanell accepted the Parkers' settlement offer and released the Parkers and her husband, which, of course, rendered the Parkers and Mr. Vanell no longer legally answerable to Mrs. Vanell.

Based on this construction of the phrase "common liability," the critical question becomes, what was the dollar amount shared by the Parkers and Mr. Vanell for which they were legally answerable? We believe that the trial court correctly determined that amount to be the total damages sustained by Mrs. Vanell and caused by the negligence of Mr. Parker and Mr. Vanell, specifically, $165,000.

The trial court, acting in its capacity as factfinder, found Mrs. Vanell's total damages to be $165,000. The trial court also found that those damages were caused *solely* by Mr. Parker and Mr. Vanell; Mrs. Vanell was not in any way at fault.[3]

At the time Mrs. Vanell filed suit against the Parkers, UCATA had not disturbed Arizona's common law scheme, which imposed joint and several liability. Under joint and several liability, both the Parkers *and* Mr. Vanell were legally answerable for Mrs. Vanell's total damages of $165,000. *See Holtz v. Holder*, 101 Ariz. 247, 418 P.2d 584 (1966) (adoption of single injury rule which imposes joint and several liability); *Prosser and Keeton on Torts* § 47, at 328 (5th ed. 1984) ("a defendant might be liable for the entire loss sustained by the plaintiff, even though the defendant's act concurred or combined with that of another wrongdoer to produce the result ...").

Effective January 1, 1988, UCATA abolished joint and several liability, with specified exceptions not relevant to this case. *See* 1987 Laws ch. 1, § 2; A.R.S. § 12–2506. Even under post-January 1, 1988 UCATA, however, the Parkers and Mr. Vanell still would be legally answerable for Mrs. Vanell's total damages of $165,000: the Parkers would be required to answer for $107,250 ($165,000 × 65%), and Mr. Vanell would be required to answer for $57,750 ($165,000 × 35%). A.R.S. § 12–2506(A) ("To determine the amount of judgment to be entered against each defendant, the trier of fact shall multiply *the total amount of damages* recoverable by the plaintiff by the percentage of each defendant's fault....").

Accordingly, under UCATA, both as it existed at the time Mrs. Vanell filed suit against the Parkers and as it exists today, the dollar amount shared by the Parkers and Mr. Vanell for which they were legally answerable is equal to Mrs. Vanell's total damages of $165,000.

Today's construction of the phrase "common liability" is not only in accordance with the rules of construction established by our legislature, but it is also consistent with this court's recent decision in *City of Tucson v. Superior Court*, 165 Ariz. 236, 798 P.2d 374 (1990).[4] In *City of Tucson*, a number of plaintiffs brought suit against the City of Tucson and various other defendants. Thereafter, the plaintiffs accepted a settlement offered by all of the defendants except the City. The settlement released all defendants, *including the City*, from liability.

The settling defendants then brought an action against the City seeking contribution for the amount they paid in excess of their pro rata share of the common liability. The trial court granted the settling defendants' motion for summary judgment, concluding that the City was estopped from contesting the amount of its liability for contribution because the settlement was made in good faith.

The court of appeals reversed holding that the City was not precluded from contesting the amount of its liability for contribution even though the settlement was made in good faith.

We granted the settling defendants' petition for review and approved the court of appeals' decision. The primary question in *City of Tucson* was, what is the liability of the defendant in a contribution action? In answering this question, we stated,

> The liability of the defendant in a contribution action is determined by the

---

3. Of course, if Mrs. Vanell had been at fault, the Parkers and Mr. Vanell would not have been legally answerable for the dollar amount of damages she caused herself. *See* A.R.S. § 12–2505(A).

4. This court had not yet filed its opinion in *City of Tucson* at the time the court of appeals issued its opinion in this case.

amount of the "common liability"—*an amount representing the total damages caused by the negligence of all the defendants*—and the degree of fault (the "pro rata share") attributable to each of the tortfeasors.

*City of Tucson*, 165 Ariz. at 241, 798 P.2d at 379 (emphasis added). We went on to say that "[t]his amount *can be* established *either* by verdict *or* through settlement." 165 Ariz. at 241, 798 P.2d at 379 (emphasis added). We meant what we said and we said what we meant in *City of Tucson:* the common liability of joint tortfeasors *can be* established "through settlement." We did not mean, nor did we say, that the common liability of joint tortfeasors *is* established "through settlement."

Likewise, we think it important to note that the destination we were trying to reach by traveling down *either* the verdict path *or* the settlement path clearly was *the amount representing the total damages caused by the negligence of all the defendants.* We said as much when we said, "We can conceive of no reason why the right of contribution in a case that has been settled should be different from, or more or less than, the right of contribution in a case that has been tried." *City of Tucson*, 165 Ariz. at 242, 798 P.2d at 380. Accordingly, and consistent with *City of Tucson*, we construe the phrase "common liability" to mean the dollar amount shared by joint tortfeasors for which they were legally answerable, which, of course, equals the amount of total damages sustained by a plaintiff and caused by the negligence of all the defendants.

### Conclusion

The trial court correctly determined the Parkers' and Mr. Vanell's "common liability" to be $165,000—the dollar amount shared by the Parkers and Mr. Vanell for which they were legally answerable and the amount representing the total damages sustained by Mrs. Vanell and caused by the negligence of Mr. Parker and Mr. Vanell. The trial court's judgment is therefore affirmed, and the court of appeals' opinion is vacated.

Costs are awarded to Mr. Vanell as the prevailing party.

MOELLER, V.C.J., and CAMERON, J., and FRANK X. GORDON, Jr., J. (Retired), concur.

FELDMAN, Chief Justice, specially concurring.

I agree with the court's result and with the analytical framework applied but write separately because I am unable to agree with the two paragraphs of the court's opinion dealing with the "common and approved use" of the phrase "common liability." Op. at 352, 824 P.2d at 748.

While the common meaning of words used in statutes is certainly a cardinal rule of interpretation, I believe the phrase "common liability," as used in UCATA (A.R.S. § 12–2501 *et seq.*), is a term of art. It avails us nothing, therefore, to separate the phrase into its constituent parts and look for the common usage of each separate word. Terms used in technical statutes such as UCATA must be interpreted in a manner that serves the evident overall legislative intent. *See City of Tucson v. Superior Court*, 165 Ariz. 236, 798 P.2d 374 (1990).