845 P.2d 504

**FRY'S FOOD STORES OF ARIZONA, Petitioner Employer,**

**Alexsis Risk Management, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**William Steele, Respondent Employee.**

**No. 1 CA–IC 91–059.**

Court of Appeals of Arizona, Division 1, Department B.

Sept. 10, 1992.

Review Granted Feb. 17, 1993.*

Joseph L. Moore, Ltd. by Joseph L. Moore, Phoenix, for petitioners.

Anita R. Valainis, Chief Counsel, The Indus. Com'n of Arizona, Phoenix, for respondent.

Delaney & Melkonoff by Edgar M. Delaney, Phoenix, for respondent employee.

OPINION

GARBARINO, Judge.

JURISDICTION

This is a special action review of an industrial commission award denying apportionment under both the occupational disease and the industrial injury apportionment statutes. *See* Ariz.Rev.Stat.Ann. ("A.R.S.") sections 23–901.05, –1044(E), The Administrative Law Judge concluded that apportionment under both statutes requires a preexisting earning capacity dis-

---

* Corcoran, J., of the Supreme Court, recused himself and did not participate in the determination of this matter.

ability and that although respondent employee (claimant) had a preexisting impairment, it was not earning capacity disabling before the April, 1986, industrial "injury." After a timely request for review by petitioner employer (Fry's), the Administrative Law Judge affirmed his prior findings and award. Thereafter, Fry's timely filed this special action. We have jurisdiction pursuant to A.R.S. sections 23–951(A), 12–120.-21(A) and Rule 10, Rules of Procedure for Special Actions. We set aside the award because the Administrative Law Judge misinterpreted section 23–901.05 to require a preexisting earning capacity disability.

## ISSUE

Do the apportionment provisions set forth in A.R.S. section 23–901.05 apply where a preexisting, nondisabling impairment not itself compensable is aggravated, prolonged, accelerated or contributed to by an occupational disease which is compensable?

## FACTS AND PROCEDURAL BACKGROUND

In April, 1986, the claimant, a custodial worker in Fry's central bakery since 1979, fainted at work. Fry's, which is self-insured, accepted his claim for compensation. However, it terminated temporary benefits without permanent impairment as of September, 1986. The claimant protested, and the dispute proceeded to hearing.

Fry's conceded that the claimant had a severe respiratory impairment. The claimant admitted having smoked two packs of cigarettes a day for thirty-seven years. Fry's produced medical evidence that the claimant's smoking had caused chronic obstructive pulmonary disease, which was solely responsible for his current impairment. The claimant produced medical evidence that he had both chronic obstructive pulmonary disease from smoking and "baker's lung" from exposure to flour at work. The latter contributed ten to fifteen percent of the respiratory impairment. The Administrative Law Judge accepted the claimant's expert. On review, this court set aside the award, but the supreme court

vacated this decision and affirmed the award. *See Fry's Food Stores v. Industrial Comm'n,* 161 Ariz. 119, 123, 776 P.2d 797, 801 (1989).

The commission subsequently awarded a permanent total disability. However, at Fry's request, it amended this award to apportion the disability between industrial and nonindustrial causes, attributing only fifteen percent to the industrial injury. Both parties requested a hearing, Fry's to protest the total disability award and the claimant to protest the apportionment.

At the ensuing hearings, Fry's produced medical evidence that baker's lung is an occupational disease under A.R.S. section 23–901.01; that it aggravated, prolonged, accelerated, or contributed to the preexisting chronic obstructive pulmonary disease; that the chronic obstructive pulmonary disease progressively worsened after April, 1986, as a result of the claimant's persistent smoking; and that the claimant nevertheless remained capable of sedentary work. The claimant in turn produced medical evidence that the baker's lung was the proverbial last straw culminating in a total disability. The claimant's expert again conceded that the preexisting chronic obstructive pulmonary disease caused eighty-five percent of the respiratory impairment and that the baker's lung caused ten to fifteen percent of this impairment.

The Administrative Law Judge issued the award for a permanent total disability without apportionment. He accepted the claimant's medical evidence, concluding that apportionment under section 23–901.05 requires a preexisting earning capacity disability. He made the following findings:

> While applicant had a pre-existing impairment, the evidence is insufficient to establish same was disabling prior to industrial episode. There was no evidence presented that prior to industrial events applicant was unable to perform job or his earning capacity was affected.

He affirmed on administrative review, and Fry's timely brought this special action.

On review, Fry's asserts that the Administrative Law Judge misinterpreted section

23–901.05. Fry's argues that the term "disability" as used in this section means a medical or physical disability. The claimant argues that the Administrative Law Judge correctly interpreted "disability" to mean a preexisting earning capacity disability.

## DISCUSSION

We find that A.R.S. section 23–901.05 mandates that where there is a preexisting, nondisabling impairment not itself compensable which is aggravated, prolonged, accelerated or contributed to by an occupational disease which is compensable, apportionment is applicable. We further find that a preexisting impairment does not need to be work-disabling for the apportionment statute to apply. It is only necessary that the occupational disease contributing to it be sufficient to create a compensable disability.

We arrive at our conclusion by interpreting the provisions of A.R.S. section 23–901.05 which reads:

> Where an occupational disease, as defined by § 23–901, paragraph 12, subdivision (c), is aggravated by any other disease or infirmity not itself compensable, *or where disability or death from any other cause not itself compensable is aggravated, prolonged, accelerated or in anywise contributed to by an occupational disease*, the compensation payable under this chapter shall be reduced and limited to such proportion only of the compensation that would be payable if the occupational disease were the sole cause of the disability or death, as such occupational disease as a causative factor bears to all the causes of such disability or death. [Emphasis added.]

Statutory interpretation is a question of law to which we apply an independent judgment standard of review. *E.g., Parker v. Vanell*, 170 Ariz. 350, 351, 824 P.2d 746, 747 (1992). Our goal in interpreting statutes is to effectuate the intent of the legislature. *E.g., State Compensation Fund v. Nelson*, 153 Ariz. 450, 453, 737 P.2d 1088, 1091 (1987). The language of the statute and the act of which it is part is the primary evidence of legislative intent, *e.g., id.*, but we also infer intent from the history of the statute and act, *e.g., Carrow Co. v. Lusby*, 167 Ariz. 18, 20, 804 P.2d 747, 749 (1990), and their general purpose, *e.g., City of Tucson v. Superior Court*, 165 Ariz. 236, 240, 798 P.2d 374, 378 (1990). We also must apply general statutory rules of interpretation, *see Parker*, 170 Ariz. at 351, 824 P.2d at 747, which provide that statutory language has its ordinary meaning, A.R.S. § 1–213, unless used in a technical sense, *id.*, or unless the ordinary meaning is "inconsistent with the manifest intent of the legislature." A.R.S. § 1–211.

The issue here is the meaning of the phrase "disability or death from any other cause not itself compensable." These words are not defined in the statute. If we assign these ordinary words their common meaning, we interpret them to mean any other cause, including a previous disability, a previous impairment, or even a latent condition that is a cause in fact of a disability or death. We do not find they mean earning capacity disability.

Section 23–901.05 refers to the ultimate condition and mandates apportionment of the jointly caused disability or death for which compensation is claimed. The statute mandates apportionment of jointly caused disability or death to the degree that an "occupational disease as a causative factor bears to *all* the causes of such disability or death [emphasis added]."

Fry's contends that the claimant did have preexisting chronic obstructive pulmonary disease and that the claimant's exposure to flour minimally contributed to his inability to work and therefore minimally contributed to his earning capacity disability.

Fry's argues that "disability" as set forth in A.R.S. section 23–901 can only mean medical or physical disability, (i.e., impairment, *see Smith v. Industrial Comm'n*, 113 Ariz. 304, 305–06 n. 1, 552 P.2d 1198, 1199–1200 n. 1 (1976)), because the adjectives "compensable," "aggravated," "prolonged," and "accelerated" modify that term. We find that the same adjectives may also modify disability in the con-

text of earning capacity disability. Therefore, we give this argument no weight.

Fry's next argues that other jurisdictions have interpreted occupational disease apportionment statutes substantially similar to A.R.S. section 23–901.05 and have applied these to preexisting but nondisabling impairments. *See Jenkins v. Halstead Industries,* 17 Ark.App. 197, 706 S.W.2d 191, 193 (1986); *cf. Price v. Lithonia Lighting Co.,* 256 Ga. 49, 343 S.E.2d 688, 690–92 (1986) (rejecting equal protection challenge to occupational disease apportionment statute). Fry's acknowledges contrary authority, *see Kingery v. Ford Motor Co.,* 116 Mich.App. 606, 323 N.W.2d 318, 322–23 (1982), *cited with approval in* 1B Arthur Larson, *The Law of Workmen's Compensation,* § 41.64(d) at 638 (1991), but attempts to distinguish it "because there the preexisting disability and the aggravating occupational disability were the same, i.e., asthmatic bronchitis." We do not find these cases to be helpful in analyzing our own statute.

It is claimant's position that he would still be able to work but for the complications suffered as a result of his exposure to flour. He therefore claims he had no earning capacity disability at the time he suffered the industrial injury. He claims his working capacity disability should be 100% compensable.

The claimant relies on *Hoppin v. Industrial Comm'n,* 143 Ariz. 118, 124, 692 P.2d 297, 303 (App.1984), which interpreted subsection 23–1044(E), to argue that apportionment does and should not take effect under A.R.S. section 23–901.05 unless there has been a previous earning capacity disability caused by prior injury. We disagree with this position. In our opinion, the claimant incorrectly tries to apply the provisions of A.R.S. section 23–1044(E) to the provisions of A.R.S. section 23–901.01 and the facts of this case. A.R.S. section 23–1044(E) expressly applies to successive (earning capacity) disabilities. It reads:

> In case there is a *previous* disability, . . . the percentage of disability for a *subsequent* injury shall be determined by computing the percentage of the *entire* dis-

ability and deducting therefrom the percentage of the *previous* disability as it existed at the time of the *subsequent* injury. [Emphasis added.]

Both *subsequent injury* and *previous disability* as set forth in the statute mean earning capacity disability because only such disabilities are compensated. *See, e.g., Phelps Dodge v. Industrial Comm'n,* 46 Ariz. 162, 167, 49 P.2d 391, 392 (1935) ("The different provisions of the Compensation Law fix compensation for disability resulting from injury. . . . Mental or physical suffering which does not lessen the employee's ability to work and earn wages is not compensable. . . ."). In contrast, section 23–901.05 does not refer to a previous or preexisting disability. Rather, it refers to "disability or death," which result from "any other cause not itself compensable" and which is "aggravated, prolonged, accelerated or in anywise contributed to by an occupational disease." A.R.S. § 23–901.05. Although the noncompensable cause may result in disability or death, the resulting disability or death is compensable if an occupational disease contributes to it.

Having examined the language of the statute, we turn to its history. Occupational diseases were uncompensated in Arizona until 1943, when the legislature first enacted an occupational disease law. *See generally, Ford v. Industrial Comm'n,* 145 Ariz. 509, 512–13, 703 P.2d 453, 456–57 (1985). This law covered only listed occupational diseases and provided substantially less favorable benefits than the general workers' compensation law. *Id.* In 1973, the legislature repealed the occupational disease law and amended the general workers' compensation law to redefine a compensable injury to include occupational diseases. *Id.* at 513, 703 P.2d at 457. The amended workers' compensation law deleted many of the prior provisions of the occupational disease law. *See, e.g., Alvarado v. Industrial Comm'n,* 148 Ariz. 561, 563–65, 716 P.2d 18, 20–22 (1986) (former A.R.S. section 23–1107(B)(3), which required death to occur within five years of last employment, is unconstitutional). The legislature, however, also retained several of the restrictions of the repealed occupa-

tional disease law, including the occupational disease apportionment statute. *See* A.R.S. §§ 23–901.01 to .05. From this history, we infer that the legislature intended section 23–901.05 to be applied as written.

For these reasons, we set aside the award denying apportionment under the occupational disease apportionment statute.

JACOBSON, P.J., and KLEINSCHMIDT, J., concur.