866 P.2d 1350

**FRY'S FOOD STORES OF ARIZONA, Petitioner–Employer,**

**Alexsis Risk Management, Petitioner–Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**William Steele, Respondent–Employee.**

**No. CV–92–0435–PR.**

Supreme Court of Arizona, En Banc.

Jan. 20, 1994.

Reconsideration Denied April 5, 1994.

Delaney & Melkonoff by Edgar M. Delaney, Phoenix, for respondent-employee.

Joseph L. Moore, Ltd. by Joseph L. Moore, Phoenix, for petitioner-employer.

Anita R. Valainis, Chief Counsel, the Indus. Com'n of Arizona, Phoenix, for respondent Indus. Com'n.

## OPINION

ZLAKET, Justice.

The issue here is whether apportionment of workers' compensation benefits pursuant to A.R.S. § 23–901.05 is appropriate where disability results from superimposition of an occupational disease upon a nonoccupational preexisting condition that did not, by itself, adversely affect claimant's ability to perform his regular employment. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

On April 5, 1986, William Steele ("claimant") fainted after becoming ill at work. He was a custodial worker who had cleaned up flour and dough at the central bakery of Fry's Food Stores ("Fry's") since 1979. Fry's, which is self-insured, initially accepted the claim for compensation. In September 1986, however, it terminated claimant's benefits, asserting that he had no permanent impairment. Claimant contested this determination.

The central issue in the subsequent hearing was whether claimant's severe respiratory problems were caused by his two-pack-a-day, thirty-seven year smoking habit, which resulted in chronic obstructive pulmonary disease, or by his seven-year exposure to flour at the workplace, which resulted in a condition known as "baker's lung." The administrative law judge ("ALJ") found that claimant's physical condition was caused by a combination of both, and entered an award for an unscheduled permanent partial disability pending a determination of his lost earning capacity. Fry's contested this finding of causation. The court of appeals set aside the award as unsupported by the evidence. We

vacated that decision and affirmed the ALJ's award. *Fry's Food Stores v. Industrial Commission*, 161 Ariz. 119, 776 P.2d 797 (1989).

The Industrial Commission thereafter determined that claimant suffered a complete loss of earning capacity and awarded him benefits for a permanent total disability. It amended the amount of those benefits, however, based on a finding that only fifteen percent of claimant's impairment was attributable to baker's lung. This "apportionment" resulted in a reduced award of $132.51 per month. Both claimant and Fry's requested a hearing, with claimant contesting the apportionment and Fry's contesting the finding of total disability.

Claimant conceded that baker's lung was responsible for only fifteen percent of his respiratory *impairment.* He argued, however, that this condition was the "proverbial last straw" that resulted in his *disability.* The ALJ agreed, affirmed the award for permanent total disability, and refused to apply the apportionment statute. He concluded there was no evidence showing that claimant's smoking habit had adversely affected his earning capacity prior to the time he contracted the occupational disease.

After the decision was affirmed on administrative review, Fry's brought a special action in the court of appeals asserting that the term "disability" in A.R.S. § 23–901.05 refers to any "physical or medical disability" and that the ALJ erred in interpreting it to mean "earning capacity disability." The court of appeals agreed and set aside that part of the award denying apportionment. *Fry's Food Stores v. Industrial Commission*, 173 Ariz. 578, 845 P.2d 504 (Ct.App.1992). We granted review. In a separate special action brought by claimant, we ordered the carrier to pay benefits in accordance with the ALJ's order pending our decision here. Claimant subsequently died, and Fry's filed a petition to dismiss this matter as moot.

Unlike federal courts, we have no constitutional "case or controversy" requirement. *Fraternal Order of Police Lodge v. Phoenix Emp. Rel. Bd.,* 133 Ariz. 126, 127, 650 P.2d 428, 429 (1982). Nevertheless, this court has consistently said it will not hear issues that become moot. *Id.* We make exceptions to this self-imposed judicial restraint, however, when issues have significant public importance or are likely to recur. *Id.; Camerena v. Dept. of Pub. Welfare,* 106 Ariz. 30, 31, 470 P.2d 111, 112 (1970). The case before us raises such concerns. Although A.R.S. § 23–901.05 has generated little controversy in the past, every occupational disease case potentially presents "apportionment" issues as that term has now been construed by the court of appeals in this matter. Because we disagree with that court's reading of the statute and believe apportionment is appropriate only in limited circumstances, we deny the motion to dismiss.

Under A.R.S. § 23–901.05, apportionment is required "[w]here an occupational disease, as defined by § 23–901, paragraph 12, subdivision (c), is aggravated by any other disease or infirmity not itself compensable, or where *disability* or death from any other cause not itself compensable is aggravated, prolonged, accelerated or in anywise contributed to by an occupational disease...." (emphasis added).[1] *See also* A.R.S. § 23–1044(D), (E) (similar apportionment provision for industrial injuries). Fry's argues that apportionment is necessary here because the medical testimony established, and claimant agrees, that 85 percent of his impairment was due to smoking while only 15 percent was due to chronic exposure to flour. However, the applicable portion of the statute uses the term "disability," not "impairment." This distinction is critical. Although these terms have not always been used with precision by the courts, they have specific meanings in workers' compensation law. *See Smith v. Industrial Commission,* 113 Ariz. 304, 305 n. 1, 552 P.2d 1198, 1199 n. 1 (1976)

---

1. We deal here only with the second part of the statute ("or where disability or death from any other cause not itself compensable is aggravated...."). Neither the parties nor the court of appeals have asserted that the first part

("[w]here an occupational disease ... is aggravated by any other disease or infirmity not itself compensable....") is applicable, presumably because there was no preexisting occupational disease here.

(adopting definitions from American Medical Association guidelines).

■ An "impairment" is "any anatomic or functional abnormality or loss," while a "disability" occurs only when an employee's "actual or presumed ability to engage in gainful activity is reduced or absent because of 'impairment' which, in turn, may or may not be combined with other factors." *Id.* Impairment connotes a medical or physical loss, while disability refers to a loss of earning capacity. In fact, the terms "disability" and "loss of earning capacity" are generally used interchangeably. *See Alsbrooks v. Industrial Commission,* 118 Ariz. 480, 484, 578 P.2d 159, 163 (1978); *see also Savich v. Industrial Commission,* 39 Ariz. 266, 270, 5 P.2d 779, 780 (1931); *Conner Mfg., Inc. v. Industrial Commission,* 172 Ariz. 251, 253, 836 P.2d 464, 466 (Ct.App.1992); *Gallardo v. Industrial Commission,* 16 Ariz.App. 491, 493, 494 P.2d 391, 393 (1972); *State Comp. Fund v. Cramer,* 13 Ariz.App. 103, 105–06, 474 P.2d 462, 464–65 (1970); *see generally Arizona Workers' Compensation Handbook,* § 7.2.1.1., at 7–2 n. 4 (Ray J. Davis et al. eds., 1992) [hereinafter *Handbook* ]. While an impairment is a prerequisite to an award for disability, *Cassey v. Industrial Commission of Arizona,* 152 Ariz. 280, 283, 731 P.2d 645, 648 (Ct.App.1987); *Sims v. Industrial Commission,* 11 Ariz.App. 385, 386, 464 P.2d 972, 973 (1970), an employee who sustains an impairment may not necessarily suffer a disability. And, as the ALJ in this case correctly held, if a claimant has a prior impairment but no prior disability, the apportionment statute does not apply.

Claimant had a preexisting lung condition from cigarette smoking. His smoking habit, together with his exposure to flour dust, resulted in a severe respiratory *impairment.* It is unclear at what point this functional loss developed. Claimant acknowledges that he had breathing problems prior to 1986, but these did not prevent him from doing his job. Further, a lung x-ray performed by his family doctor in 1984 did not result in a diagnosis of pulmonary disease. Yet, tests at the time of the 1986 incident resulted in the dual diagnoses of chronic obstructive pulmonary disease and baker's lung.

It is clear, however, that claimant's *disability,* or loss of earning capacity, did not occur until after he was exposed to flour dust. Thus, the evidence supports the ALJ's finding that the baker's lung was "the straw that broke the camel's back." *Tatman v. Provincial Homes,* 94 Ariz. 165, 169, 382 P.2d 573, 576 (1963). Conversely, nothing in the record supports an assertion that claimant was or would have been disabled in the absence of the baker's lung. On these facts, then, the ALJ correctly held that the apportionment statute did not apply.

In reaching a contrary conclusion, the court of appeals relied heavily on the fact that the language of A.R.S. § 23–1044(E), the industrial injury apportionment statute, differs from that used in § 23–901.05. It concluded that this variation in language indicates a legislative intent to treat apportionment differently in occupational disease cases. We disagree.

In *Ford v. Industrial Commission,* we outlined the historical difference in treatment between compensation for industrial injuries and occupational diseases. 145 Ariz. 509, 512–14, 703 P.2d 453, 456–58 (1985); *see also Handbook, supra,* § 5.3, at 5–2 to 5–5. We concluded that while some distinct provisions for occupational diseases remain, the modern approach is to treat diseases and injuries the same. *See Ford, supra; see also* A.R.S. § 23–901(12)(c) (expanding the general definition of "personal injury by accident" to include occupational diseases). Although we need not address all the similarities and distinctions between occupational disease and industrial injury apportionment, we are persuaded that the term "disability" means the same thing under both statutes. The legislature specifically used the term "disability," not "impairment," in § 23–901.05, and we reject the argument that it really meant one when it said the other.

Our reading furthers one of the primary purposes of Arizona's overall scheme: to compensate employees for lost earning capacity from employment-related disabilities. *Maness v. Industrial Commission,* 102 Ariz. 557, 559, 434 P.2d 643, 645 (1967). This purpose applies equally to loss of earning capacity from occupational disease and indus-

trial injury. *See, e.g., Ford,* 145 Ariz. at 517, 703 P.2d at 461 (occupational diseases); *Magma Copper Co. v. Industrial Commission,* 62 Ariz. 9, 13, 152 P.2d 618, 619 (1944) (same); *Altamirano v. Industrial Commission,* 22 Ariz.App. 379, 380, 527 P.2d 1096, 1097 (1974) (industrial injuries).

■ The interpretation urged by Fry's and adopted by the court of appeals confuses causation and apportionment. Both industrial injuries and occupational diseases must arise "out of employment" to be compensable. Ariz. Const. art. 18, § 8; A.R.S. §§ 23–901(12)(c), 23–901.01 (occupational diseases); A.R.S. § 23–1021 (industrial injuries). Statutory causation requirements are stricter for occupational diseases than they are for industrial injuries to insure that the source of the disease "is one related to employment and not one which is part of the ordinary hazards of life to which the general public is exposed." *Ford,* 145 Ariz. at 518, 703 P.2d at 462; *see generally* 1B Arthur Larson, *The Law of Workmen's Compensation,* § 41.64 at 7–612 to 7–635 (1993). Even under these more rigid requirements, however, the occupational disease need not be the *sole* cause of the disability so long as it is a contributing cause. *Ford,* 145 Ariz. at 518, 703 P.2d at 462. In the present case, claimant's lung pathology was attributable to a combination of long-term cigarette smoking and inhalation of flour dust. We therefore previously determined that the evidence was sufficient to support the finding of causation. *Fry's Food Stores,* 161 Ariz. at 123, 776 P.2d at 801.

Apportionment is an entirely separate matter. A.R.S. § 23–901.05 requires apportionment of disabilities, *not* apportionment of the different causes of a single disability. According to a leading authority on workers' compensation, this distinction is critical and has created much confusion among states with apportionment statutes identical or similar to ours. 1B Larson, *supra,* § 41.64(d) at 7–640 ("The crucial distinction, then, is between apportioning disability and apportioning cause. The former is possible in the minority of states having apportionment statutes; the latter is never possible.").

California follows the Larson approach. In *Pullman Kellogg v. Workers' Comp. App. Bd.,* 26 Cal.3d 450, 161 Cal.Rptr. 783, 605 P.2d 422 (1980), a case factually similar to ours, the claimant became disabled due to obstructive lung disease. The court found that claimant's pathology was caused by both his thirty-year smoking habit and his forty-year exposure to industrial dust and fumes. In rejecting application of the apportionment statute,[2] the court distinguished between a situation where a nonoccupational source (smoking) causes a partial *disability* that preexists the occupational disease, and that in which the nonoccupational source is one of the *causes* of disability in the first instance. *Kellogg,* 26 Cal.3d at 454–55, 161 Cal.Rptr. at 785–86, 605 P.2d at 424–25. Other states have reached similar results. *See, e.g., Kingery v. Ford Motor Co.,* 116 Mich.App. 606, 323 N.W.2d 318 (1982) (apportionment statute inapplicable where smoking habit combined with work environment to cause claimant's disabling lung pathology);[3] *Rutledge v. Tultex Corp./Kings Yarn,* 308 N.C. 85, 301 S.E.2d 359 (1983) (disabling chronic obstructive lung disease caused by dual components of asthma from cigarette smoking and byssi-

---

2. California's apportionment statute provides: "In case of aggravation of any disease existing prior to a compensable injury, compensation shall be allowed only for the proportion of the disability due to the aggravation of such prior disease which is reasonably attributed to the injury." Cal. [Labor] Code § 4663 (West 1989).

3. Michigan's occupational disease statute, Mich. Comp.Laws Ann. § 418.431, is nearly identical to Arizona's and provides:

Where an occupational disease is aggravated by any other disease or infirmity, not itself compensable, or where disability or death from any other cause, not itself compensable, is aggravated, prolonged, accelerated or in any way contributed to by an occupational disease, the compensation payable shall be a proportion only of the compensation that would be payable if the occupational disease were the sole cause of the disability or death as such occupational disease, as a causative factor, bearing to all the causes of such disability or death, such reduction in compensation to be effected by reducing the number of weekly payments or the amounts of such payments, as under the circumstances of the particular case may be for the best interest of the claimant or claimants.

nosis from inhalation of cotton dust would not be properly apportionable).[4]

Fry's asserts that Larson supports its reading of the statute. We do not agree. *See* 1B Larson, *supra*, § 41.64(d), at 7–635 to 7–641. Of the cases Larson criticizes, perhaps the most notable is *Jenkins v. Halstead Industries*, 17 Ark.App. 197, 706 S.W.2d 191 (1986), the Arkansas case after which Fry's urges us to pattern our decision.[5] In *Jenkins*, the claimant had chronic obstructive pulmonary disease caused by both cigarette smoking and exposure to rubber curing processes. The court held that the apportionment statute applied and that it did not require a preexisting disability. *Jenkins*, 17 Ark.App. at 201–02, 706 S.W.2d at 193.

We reject the *Jenkins* approach, because it confuses causation and apportionment. As Larson notes, while Arkansas and two other states—Alabama[6] and Georgia[7]—have dealt with dual causation cases by resorting to apportionment, "most have succeeded in resisting the temptation." 1B Larson, *supra*, § 41.64(d) at 7–636. North Carolina initially adopted such an approach when it apportioned chronic obstructive lung disease between byssinosis from exposure to textile fibers and several other infirmities from non-work-related causes. *Morrison v. Burling-*

*ton Industries*, 304 N.C. 1, 282 S.E.2d 458 (1981). Larson notes, however, that while North Carolina "got off on the wrong foot" in *Morrison*, it subsequently abandoned that line of reasoning in *Rutledge*. 1B Larson, *supra*, § 41.64(d) at 7–639.

■ Like California and Michigan, we feel constrained to read our apportionment statute in a manner consistent with the long-standing principle that employers must take employees as they find them. *See, e.g., Murphy v. Industrial Commission*, 160 Ariz. 482, 486, 774 P.2d 221, 225 (1989); *Tatman*, 94 Ariz. at 168, 382 P.2d at 575; *Murray v. Industrial Commission*, 87 Ariz. 190, 199, 349 P.2d 627, 633 (1960); *see also State Compensation Fund v. Joe*, 25 Ariz.App. 361, 366, 543 P.2d 790, 795 (1975) (application of principle to occupational disease). Furthermore, this approach is consistent with our prior treatment of dual-causation cases, *see e.g., Ford*, 145 Ariz. 509, 703 P.2d 453; *Morrison–Knudsen Co., Inc. v. Industrial Commission*, 115 Ariz. 492, 566 P.2d 293 (1977); *Tatman*, 94 Ariz. 165, 382 P.2d 573; *Revles v. Industrial Commission*, 88 Ariz. 67, 352 P.2d 759 (1960); *Murray*, 87 Ariz. 190, 349 P.2d 627; *Lee Moor Contracting Co. v. Industrial Commission*, 61 Ariz. 52, 143 P.2d 888 (1943), and with the underlying purposes of the

---

**4.** North Carolina does not have an apportionment statute per se. However, that state's supreme court had earlier interpreted its statutory provisions dealing with total versus partial incapacity to effectively require apportionment. *See Morrison v. Burlington Indus.*, 304 N.C. 1, 282 S.E.2d 458 (1981) (interpreting G.S. §§ 97–29, 97–30). There is some debate, however, over the continuing validity of *Morrison* after *Rutledge*. *See Rutledge*, 308 N.C. at 109, 301 S.E.2d at 374 (J. Meyer, dissenting); Note, *Worker's Compensation—Rutledge v. Tultex Corp/King's Yarn: Leaving Precedent in the Dust?* 62 N.C.L.Rev. 573 (1984); *Pitman v. Feldspar Corp.*, 87 N.C.App. 208, 215–16, 360 S.E.2d 696, 700 (1987).

**5.** Arkansas' apportionment statute is almost identical to Arizona's and Michigan's. *See* Ark.Code Ann. § 11–0–601(c)(1).

**6.** Alabama construed its apportionment statute in *Reynolds Metals Co. v. Stults*, 532 So.2d 1035 (Ala.Civ.App.1988). Note, however, that Alabama's statute is significantly different than Arizona's. It provides: "If the degree or duration of disability resulting from an accident is in-

creased or prolonged because of a pre-existing injury or infirmity, the employer shall be liable only for the disability that would have resulted from the accident had the earlier injury or infirmity not existed." Ala.Code § 25–5–58.

**7.** Georgia's leading case on this issue is *Price v. Lithonia Lighting Co.*, 256 Ga. 49, 343 S.E.2d 688 (1986). Georgia's provision is also nearly identical to Arizona's. *See* Ga.Code Ann. § 34–9–285. However, while Georgia appears to have adopted the same approach as Arkansas, it should be noted that *Price* is factually distinct from the present case and from the others discussed here, because there, the claimant appears to have had a preexisting *disability*. The court noted that claimant's preexisting condition originated in childhood and that "[a]s a result of her respiratory problems, she had to leave the job she had held prior to becoming employed by the appellee." 256 Ga. at 49, 343 S.E.2d at 689. Therefore, because Alabama's statute is different and *Price* is factually distinct, it is reasonable to conclude that Arkansas is the *only* state that has interpreted its apportionment statute in the manner urged by Fry's and rejected by Larson.

workers' compensation system. *See Ford,* 145 Ariz. at 517, 703 P.2d at 461.

We therefore vacate the court of appeals' decision and affirm the ALJ's award.

FELDMAN, C.J., MOELLER, V.C.J., and MARTONE, J., and WILLIAM E. DRUKE, Judge, Court of Appeals, concur.

CORCORAN, J., did not participate in the determination of this matter. Pursuant to Ariz. Const. art. 6, § 3, the Honorable WILLIAM DRUKE, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in his stead.